IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

**UNDER SEAL**

WITH ONE *EX PARTE* EXHIBIT

IN RE: APPLICATION OF THE UNITED  )
STATES OF AMERICA FOR ORDER )
PURSUANT TO 18 U.S.C. § 2703(d) )
                                                              )

Case No. 1:20-DM-00012 (AJT)

GOVERNMENT'S RESPONSE IN OPPOSITION TO WARNER MEDIA'S
OBJECTIONS TO AND APPEAL FROM MAGISTRATE JUDGE'S DENIAL OF
MOTION TO QUASH OR MODIFY ORDER ISSUED PURSUANT TO 18 U.S.C. § 2703(D)

The United States of America submits this brief in opposition to Warner Media, LLC

("Warner Media")'s Objections to and Appeal from Magistrate Judge's Denial of Motion to

Quash or Modify Order Issued Pursuant to 18 U.S.C. § 2703(d) (the "Appeal"). Several exhibits

are attached to this pleading as filed with the Clerk's Office and served on Warner Media, but we

also rely upon two classified documents (Exhibits 5A and 8A) previously filed with the Court on

an *ex parte* basis when the matter was being considered by Magistrate Judge Buchanan, and one

unclassified document - - the original application for the 2703(d) order that the government filed

with Magistrate Judge Davis in July 2020 - - that was filed *ex parte* in July 2020.[1] (Exhibit 1).

For the reasons outlined below, the Court should deny Warner Media's appeal.

I.      Background

On July 14, 2020, the United States submitted an *ex parte* application to U.S. Magistrate

Judge Ivan D. Davis for an order ("the Turner Order") pursuant to 18 U.S.C. § 2703(d), directing

Warner Media to produce certain records related to the account "Barbara.starr@turner.com"

---

[1] We understand that the Classified Information Security Officer will bring Exhibits 5A and 8A to this Court for consideration in connection with this appeal by Warner Media.

within ten days of the issuance of the order.  Exhibit 1.[2]  In support of that application, the

United States set forth specific and articulable facts showing that there were reasonable grounds

to believe that the records sought from that account were relevant and material to an ongoing

criminal investigation.  As this Court can see from that application, the records sought from the

"Barbara.starr@turner.com" account were relevant and material to an ongoing criminal

investigation of significant import.

On July 15, 2020, Magistrate Judge Davis granted the application.  Exhibit 2.  In his

Order, he specifically stated his finding that the government "offered specific and articulable

facts showing that there [were] reasonable grounds to believe that the records sought [were]

relevant and material to an ongoing criminal investigation."  *Id.*

On July 17, 2020, Warner Media was served the Turner Order.[3]  On September 11, 2020,

without having produced any records in response to that order, Warner Media moved to quash or

modify it ("Motion to Quash" or "Mot. to Quash").  Exhibit 4.  The government opposed the

motion, Exhibit 5, and filed an *ex parte* classified addendum with its response.  Exhibit 5A.

Warner Media then replied to the government's opposition.  Exhibit 6.

---

[2]  As required under the Department of Justice's news media policy, codified at 28 C.F.R. § 50.10, prior to submitting its § 2703(d) application to Judge Davis, the government requested and received approval from the Attorney General to proceed.  In considering the government's request, the Attorney General considered, inter alia, a variety of rigorous factors, including whether the information sought is "essential" to the investigation and "narrowly drawn."  28 C.F.R. § 50.10(c)(5)(ii)(A), (vii).  As the Court is aware, and as Warner Media highlights in its appeal (See Appeal at 19-20), these standards go above and beyond what is required under 18 U.S.C. § 2703(d).

[3]  The government initially agreed to a 30-day extension for Warner Media's production in response to the Turner Order.  Later, on August 27, 2020, Magistrate Judge Buchanan extended the deadline until September 11, 2020.  Exhibit 3.

On October 7, 2020, a hearing on the motion to quash was held by Zoom before Magistrate Judge Buchanan. Judge Buchanan noted concerns about the scope of the order issued by Judge Davis, granted the motion in part, and ordered the government to submit a proposal to narrow the scope of records it sought. Exhibit 7.

On October 9, 2020, the government moved for reconsideration of Judge Buchanan's October 7th Order. Exhibit 8. In its motion for reconsideration, the government noted the constraints that the Zoom hearing put upon its ability to address the concerns that were raised by Judge Buchanan at the hearing two days earlier. The government pointed out that discussing the basis for the government's need for the records sought through the 2703(d) order in a Zoom session attended by Warner Media risked requiring the government to disclose to a potential witness the scope of the government's investigation, as well as what the government knew or did not know about it. Further, the government noted that, in any event, even with Judge Buchanan alone, it could not have discussed in an unsecure Zoom session the classified information from Exhibit 5A.

Accordingly, and to address the concerns raised by Judge Buchanan on October 7th, the government submitted with its motion for reconsideration a new *ex parte* classified declaration from the lead FBI case agent. Exhibit 8A. Warner Media filed a response in opposition to the government's motion. Exhibit 9.

On October 26, 2020, after a brief hearing - - again through Zoom - - Judge Buchanan granted the government's motion for reconsideration, and ordered Warner Media to comply with the Turner Order by November 2, 2020. Exhibits 10 and 11.

On November 2, 2020, Judge Buchanan granted Warner Media's motion to stay until December 2, 2020, her order of October 26th. Exhibit 12.

On November 9, 2020, Warner Media filed its objections and appeal before this Court, challenging Judge Buchanan's order for Warner Media to comply with the Turner Order. On November 23, 2020, this Court granted Warner Media's unopposed motion to stay that Order until December 16, 2020. Exhibit 13.

The government now responds to Warner Media's objections and appeal.

II.      Standard of Review

Warner Media argues that the Court should apply a *de novo* standard in reviewing Judge Buchanan's decision to deny its Motion to Quash. Appeal at 7. This argument is without merit. Instead, the Court should instead apply in its review a "clearly erroneous or contrary to law" standard.

As this Court previously wrote, "[r]eview of a magistrate's order, usually a non-dispositive matter, is properly governed by the 'clearly erroneous or contrary to law' standard of review." *Attard Indus., Inc. v. U.S. Fire Ins. Co.*, No. 1:10–cv–121, 2010 WL 3069799 at *1 (E.D. Va. Aug. 5 2010) (internal quotation and ellipse omitted). *Accord Tafas v. Dudas*, 530 F. Supp. 2d 786, 792 (E.D. Va. 2008) (Cacheris, J.) ("As a non-dispositive matter, the review of a magistrate's discovery order is properly governed by the "clearly erroneous or contrary to law" standard of review"); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 609 (E.D. Va. 2008) (Lee, J.) (holding that a magistrate's ruling on a civil discovery subpoena was a "pretrial matter that is not dispositive of a party's claim or defense" and, therefore, the appropriate standard of review for the district court was "clearly erroneous or contrary to law" as outlined in 28 U.S.C. § 636(b)(1)(A)).

Under 28 U.S.C. § 636(b)(1)(A), a magistrate judge may be designated to "hear and determine any pretrial matter," subject to reconsideration by the district court on a showing that

"the magistrate's order is clearly erroneous or contrary to law." Excepted are eight categories of "dispositive" pretrial motions with respect to which a magistrate may conduct evidentiary and other hearings and recommend dispositions, that are subject to *de novo* review by the district court.[4] 28 U.S.C. § 636(b)(1)(A)-(B).

In criminal proceedings, § 636(b)(1)(A) is implemented through Rule 59 of the Federal Rules of Criminal Procedure, which similarly instructs district courts to apply a "contrary to law or clearly erroneous" standard when reviewing magistrate orders that are not dispositive.[5]

Rule 59(a) authorizes a party to file objections to a magistrate judge's order that determines "any matter that does not dispose of a charge or defense."[6] Rulings by magistrate judges on search warrant applications, discovery orders, or production orders under § 2703(d) - including a ruling on a motion to quash an order like the one at issue here - is akin to a pretrial matter and does not dispose of any substantive aspects of a case. Consequently, these "pretrial matters" are covered by § 636(b)(1)(A) and Rule 59(a), and are subject to the "clearly erroneous or contrary to law" standard. *See* Fed. R. Crim. P. 59(a); *see also* 28 U.S.C. § 636(b)(1)(A);

---

[4] 28 U.S.C. § 636(b)(1)(A) identifies eight pretrial motions that are dispositive: motions (1) for injunctive relief, (2) for judgment on the pleadings, (3) for summary judgment, (4) to dismiss or quash an indictment or information made by the defendant, (5) to suppress evidence in a criminal case, (6) to dismiss or to permit maintenance of a class action, (7) to dismiss for failure to state a claim upon which relief can be granted, and (8) to involuntarily dismiss a claim). These motions therefore trigger a *de novo* review by a district court judge. *See Gomez v. United States*, 490 U.S. 858, 868 (1989).

[5] In civil matters, a party may submit objections to a magistrate judge's ruling on non-dispositive matters in accordance with Fed. R. Civ. P. 72(a). Regardless of any differences between Fed. R. Civ. P. 72(a) and Fed. R. Crim. P. 59(a), however, appeals of grand jury matters are governed by the rules of criminal procedure. *In re Grand Jury Subpoenas, 89-3 and 89-4*, 902 F.2d 244, 246-47 (4th Cir.1990).

[6] In contrast, Rule 59(b) permits a party to file objections to a magistrate judge's "proposed findings and recommendations" for disposing of "a defendant's motion to dismiss or quash an indictment or information, a motion to suppress evidence, or any matter that may dispose of a charge or defense."

*Gomez v. United States*, 490 U.S. 858, 868 & n.16 (1989) (listing search warrant applications as among the non-dispositive "pretrial matter[s]" under § 636 that may be heard and determined by magistrate judges subject to reconsideration by a district judge on a showing that the "magistrate's order is clearly erroneous or contrary to law").

Further, the "clearly erroneous or contrary to law" standard is a deferential one. As this Court wrote earlier this year, in considering an appeal from a decision of Magistrate Judge Anderson, factual findings made by a magistrate judge should be affirmed unless review of the entire record leaves the district court with the definite and firm conviction that a mistake has been committed:

> The Fourth Circuit has held that the clearly erroneous standard is deferential and that findings of fact should be affirmed unless review of the entire record leaves the reviewing court with the definite and firm conviction that a mistake has been committed.

*In Re Capital One Consumer Data Breach Litigation*, 2020 WL. 3470261 at *2 (E.D. Va. June 25, 2020) (internal quotations omitted). *Accord Attard Indus. Inc.*, 2010 WL 3069799 at *1; *Tafas*, 530 F.Supp. 2d at 792 (citations omitted).

Finally, as this Court wrote, a decision is considered "contrary to law" "when it fails to apply or misapplies relevant statues, case law, or rules of procedure." *Capital One Consumer Data Breach Litigation*, 2020 WL. 3470261 at *2; *Attard Indus. Inc.*, 2010 WL 3069799 at *1.

As noted above, Warner Media is challenging Judge Buchanan's order to comply with Judge Davis's 2703(d) order. In 2011, an identical issue was before Judge O'Grady, in the context of an appeal from Judge Buchanan's denial of an order to quash a different 2703(d) order, directed at Twitter. In that case, Judge O'Grady determined that the correct standard of review of Judge Buchanan's decision was whether it was "clearly erroneous or contrary to law." *In re Application of the United States of America for An Order Pursuant to 18 U.S.C. § 2703(d)*,

6

830 F. Supp. 2d 114, 125 (E.D. Va. 2011) (Judge O'Grady applying "clearly erroneous or contrary to law" standard in affirming Judge Buchanan's determinations, *inter alia*, that 2703(d) order was proper in scope and did not violate petitioner's First Amendment rights).

In that case (hereafter the "*Twitter District Court Decision*"), Judge O'Grady explained that a § 2703(d) order is the "functional equivalent" of a pretrial order within the meaning of § 636(b)(1)(A). *Id.* at 126. He further explained that generally requiring *de novo* review of such orders would raise "practical concerns" by "rendering the investigation open to significant interference and delay." *Id.* "This would transform what has historically been a series of *ex parte* proceedings constrained by judicial review into an adversarial contest of attrition. Interested parties would have the power to effectively halt or direct the course of the investigation, or to impose a significant procedural burden to it." *Id.*

Giving deference to Judge Buchanan's insight, Judge O'Grady went on to state, "[t]he magistrate judge is in the best position to understand how her rulings will affect the government's investigation and discretion is therefore most appropriately vested with her." *Id.* As Judge O'Grady correctly concluded, the non-dispositive nature of § 2703(d) orders and the practical consequences that would result from *de novo* review militate strongly in favor of deferential district court review. This Court should reach the same result that it did in *Attard Indus., Inc.,* and that Judge O'Grady did in the *Twitter District Court Decision.*

In support of its argument for the applicability of *de novo* review, Warner Media relies exclusively on *In re Application of the U.S. for an Order Pursuant to 18 U.S.C. § 2703(D)*, 707 F.3d 283, 289 (4th Cir. 2013), which involved the Fourth Circuit's mandamus review of sealing and public access decisions relating to the § 2703(d) order that was the subject of the Twitter

District Court Decision. Appeal at 7. Warner Media's reliance on that decision ((hereafter the *"Twitter Fourth Circuit Decision"*) is misplaced.

When the *Twitter District Court Decision* was appealed, the question of whether Judge Buchanan's 2703(d) order should be enforced was no longer an issue. *Twitter Fourth Circuit Decision*, 707 F.3d at 289. Indeed, as the Fourth Circuit noted, the denial of the motion to vacate the Twitter Order was "abandoned on appeal." *Id.* at n.4. As a result, the only two substantive issues on appeal were "(1) whether the district court erred in refusing to unseal the other § 2703(d) Orders and derivative motions and orders concerning such orders; and (2) the sufficiency of the docketing system employed by district courts in the Eastern District of Virginia." *Id.*

In the *Twitter Fourth Circuit Decision,* the Fourth Circuit concluded that decisions by magistrate judges relating to access to court records are subject to *de novo* review by a district court. *Id.* at 289. The Fourth Circuit's decision concerning the review of sealing and access orders, however, has no bearing on the issue in this case, which has nothing to do with sealing or public access.

While decisions relating to public access might be committed to district judges as a matter of common law tradition, Warner Media can point to no similar tradition for § 2703(d) orders, which are routinely issued by magistrate judges. As Judge O'Grady correctly concluded in the *Twitter District Court Decision* that was *not* the subject of an appeal, a decision granting a § 2703(d) order is akin to a pretrial matter under § 636(b)(1)(A) and, therefore, should be subject to district court review under a "clearly erroneous or contrary to law" standard. *Twitter District Court Decision,* 830 F. Supp. 2d at 125.

8

In short, regardless of the standard of review for decisions regarding unsealing and docketing, the standard of review for the denial of a motion to quash a 2703(d) order is whether the denial was based on factual findings that were "clearly erroneous" or legal conclusions that were "contrary to law."

III.   <u>Argument</u>

Warner Media argues that Judge Buchanan erred in denying its Motion to Quash because the Turner Order "cannot be squared with the First Amendment or § 2703(d) and imposes an undue burden on Warner Media." Appeal at 3. As discussed below, Warner Media fails to demonstrate any error in Judge Buchanan's ruling, much less that it was clearly erroneous or contrary to law.

A.  By Denying Warner Media's Motion to Quash, Judge Buchanan Correctly
    Found That The Turner Order Satisfies Section 2703(d)'s Relevance Requirement,
    <u>Is Narrowly Tailored, And Does Not Cause Warner Media An Undue Burden</u>

Although Warner Media is not privy to the Turner Order's factual basis (which remains sealed), Warner Media contends that the records sought relate to tens of thousands of emails, "most [of which] could not be relevant and material to the government's investigation." Appeal at 22. In making this argument, Warner Media seeks to relitigate the determinations of Judge Davis and Judge Buchanan that the information sought through the Turner Order is "relevant and material" to an ongoing investigation. Further, Warner Media contends that "even if the general § 2703(d) relevance standards are satisfied here, the [Turner] Order nonetheless fails to satisfy the undue-burden requirement given the important First Amendment interests at stake." Appeal at 24. For the reasons outlined below, these arguments are without merit.

Procedurally, Warner Media may not challenge the Turner Order on the ground that that the information sought is not "relevant and material" to an ongoing investigation. The Turner

Order was issued under § 2703(d), which is part of the Stored Communications Act, 18 U.S.C. §§ 2701-12 (the "SCA").  Under § 2703(d), a provider may move to quash or modify a § 2703(d) order if: (1) "the information or records requested are unusually voluminous;" or (2) compliance would cause it "undue burden."  In the context of § 2703(d), it is clear that "undue burden," which appears alongside the phrase "unusually voluminous," refers to the administrative or physical burden associated with producing the materials covered by a disclosure order.

"Undue burden" is not a reference to burdens associated with abstract legal concepts like Warner Media's First Amendment claim.  *See, e.g., Yates v. United States*, 574 U.S. 528, 543 (2015) (relying on "the principle of noscitur a sociis—a word is known by the company it keeps—to 'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress.'") (citation omitted).  In any event, Warner Media's "undue burden" argument, which hinges on a representation that compliance would put "important First Amendment interests at stake" (Appeal at 24), was swiftly dismissed by Judge Buchanan and is without merit for the reasons

<<

<<

<<

<<

<<

<<

<<

<<

<<

10

laid out in the First Amendment discussion, *infra*.[7] *See* Exhibit 10, Oct. 26, 2020 Hr'g Tr. 8:1 –

5 (Judge Buchanan dismissing Warner Media's "undue burden" argument, noting "I don't

believe it's as burdensome in that I think that this is something that an IT person can easily pull

up, and they obviously already did since you know how many contacts there were").

The SCA expressly prohibits the improvising of remedies. Specifically, Congress

provided that "[t]he remedies and sanctions described in this chapter are the only judicial

remedies and sanctions for nonconstitutional violations of this chapter." 18 U.S.C. § 2708;

*Twitter District Court Decision*, 830 F. Supp. 2d at 129 (Judge O'Grady affirming Judge

Buchanan's ruling that petitioners had no statutory standing, and declining to infer a non-

enumerated statutory remedy because Congress explicitly limited the scope of remedies and

sanctions in 18 U.S.C. § 2708); *United States v. Clenney*, 631 F.3d 658, 667 (4th Cir. 2011)

(explaining that "Congress has shown that it knows how to create a statutory suppression

remedy" and noting that while Congress established a mechanism for suppression of evidence

---

[7] The cases that Warner Media cite in support of its "undue burden" claim are readily distinguishable. See Appeal at 16, 19. For example, in *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d at 612, Judge Lee held that a subpoena seeking all emails within a timeframe created an undue burden for the receiving party. However, that determination was heavily influenced by the high likelihood that production would include privileged attorney-client conversations. Even assuming *arguendo* that valid claims of privilege can constitute 'undue burden' within the meaning of § 2703(d), it is clear that Warner Media has no such claim here. Indeed, the Supreme Court has made clear that there is no recognized newsman privilege. *Branzburg v. Hayes*, 408 U.S. 665, 690 (1972). In addition, Warner Media relies on *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019), where the Fourth Circuit affirmed a district court's finding that a subpoena from a Mississippi death-row inmate seeking records from the Virginia Department of Corrections in order to challenge the legality of Mississippi's lethal injection caused undue burden to the recipient. The Fourth Circuit was heavily influenced by *inter alia*, petitioner's failure to demonstrate why Virginia was the sole source of information, despite evidence of alternative sources. *Id.* at 191. In contrast, Warner Media is the sole source of the information requested through the Turner Order. Without Warner Media's compliance, the government will be significantly harmed by not receiving information that is relevant and material to its ongoing investigation.

obtained in violation of wiretaps under 18 U.S.C. § 2515, it did not do so for violations of § 2703(d)).[8]

Neither § 2703(d), nor any other provision of the SCA, permits a provider to challenge an order on the ground that the information sought is not "relevant and material" to an ongoing investigation. The absence of any such provision makes sense, as providers such as Warner Media seldom have access to the facts supporting the government's request for a § 2703(d) order and are thus ill-equipped to assess whether there are reasonable grounds to believe that the information sought will be relevant and material to an ongoing criminal investigation. Accordingly, Warner Media's challenge to Judge Davis's determination that the information sought through the Turner Order is "relevant and material" to the government's ongoing criminal investigation is not properly before the Court and must be rejected for that reason alone.

Even assuming *arguendo* Warner Media's challenge is properly before the Court, it must be rejected on the merits. Warner Media argues Judge Buchanan was wrong to deny its motion to quash or modify the Turner Order because it "fails to satisfy the § 2703(d) relevance requirements because it compels the production of information related to thousands of emails that almost certainly have no relationship to the government's investigation." Appeal at 24.

The Court's review of the government's initial *ex parte* application (Exhibit 1), however, will make clear that it offered "specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought, are relevant and material to an ongoing criminal investigation" and that Judge Davis and Judge Buchanan were on firm ground

---

[8] Section 2708 implies that additional "remedies and sanctions" may be available for constitutional violations. To the extent that Warner Media claims that the Turner Order violates the First Amendment (as opposed to merely claiming that First Amendment concerns warrant a strict application of Section 2703(d)), that claim lacks merit for the reasons discussed *infra*.

in so concluding. The Court's review will likewise confirm that the government's request for records is not overbroad. The production sought by the government is limited to only non-content information such as the account subscriber's name, address, and connection records.[9]

These types of routine business records are frequently obtained through subpoenas, bypassing judicial scrutiny altogether. *See Clenney*, 631 F.3d at 666 (recognizing that under 18 U.S.C. § 2703(c)(2), "[t]he government can bypass these procedures [court issued warrant or order] and simply subpoena the records if it seeks only basic subscriber information"). Moreover, this Court's review of the application and *ex parte* classified declarations will confirm Judge Buchanan's determination that the requested production is narrowly tailored, in time and scope,[10] in light of the nature and circumstances of the investigation and the other information available to the government. Exhibit 10, Oct. 26, 2020 Hr'g Tr. 7:17 – 8:9 (Judge Buchanan finding that "[E]ven though it [Turner Order] was narrow to start with with [sic] a two-month period, I am convinced by the government's confidential submission to me that there is no good

---

[9] As noted above, the government is not seeking the production of subject header information.

[10] Warner Media's assertion that the Turner Order can and should be further narrowed, including through the use of a protective order, is without merit. Appeal at 26. Presenting such arguments, without possessing any knowledge of the government's ongoing criminal investigation, is exactly the scenario that Judge O'Grady warned against. *See Twitter District Court Decision*, 830 F. Supp. 2d at 126 ("This would transform what has historically been a series of *ex parte* proceedings constrained by judicial review into an adversarial contest of attrition. Interested parties would have the power to effectively halt or direct the course of the investigation, or to impose a significant procedural burden to it."). Judge Buchanan, having reviewed the government's application for the Turner Order and the *ex parte* classified declarations - - none of which Warner Media has ever seen - - is in the best position to understand how her actions will influence the government's investigation. *See id.* (Judge O'Grady further noting that "[t]he magistrate judge is in the best position to understand how her rulings will affect the government's investigation and discretion is therefore most appropriately vested with her"). Accordingly, the Court should find that Judge Buchanan was correct in her determination that the Turner Order is narrowly tailored and cannot be further narrowed.

way to now narrow this further." "So as I said, I am now convinced that there is no good way to narrow this [Turner Order] further that would not jeopardize the investigation . . . ."); *see also* Exhibits 1, 5A, and 8A.

In sum, upon reviewing the aforementioned submissions, this Court will conclude that in denying Warner Media's Motion to Quash, Judge Buchanan's findings of law were not "contrary to law" and her findings of fact not "clearly erroneous."

Although Warner Media has never seen the government's *ex parte* application or the information offered in support thereof, it speculates that the Turner Order authorizes an "impermissible fishing expedition" and asserts that a significant portion of the responsive records are not relevant to the government's investigation. Appeal at 23. Courts in this district have previously rejected such speculative challenges to § 2703(d) orders. *See In re: s 2703(d) Order; 10GJ3793,* 787 F. Supp. 2d. 430, 437 (E.D. Va. 2011) (where Judge Buchanan dismissed petitioner's speculative claim that the government's application could not have justified the scope of the § 2703(d) order); *Twitter District Court Decision*, 830 F. Supp. 2d at 130 (Judge O'Grady holding, in affirming Judge Buchanan's decision, that the government's confidential factual affidavit, which petitioner had never seen, meets the legal threshold of 18 U.S.C. § 2703(d)). The Court should likewise reject the similar claim brought by Warner Media here.

Contrary to Warner Media's apparent view, the government need not establish in its application that every record it seeks is directly relevant to the government's ongoing investigation before a § 2703(d) order may be issued. Indeed, this district recognized that "§ 2703(d) is routinely used to compel disclosure of records, only some of which are later determined to be essential to the government's case." *In re: s 2703(d) Order; 10GJ3793*, 787 F.

14

Supp. 2d at 437 ("[t]he scope of the Twitter Order is appropriate even if it compels disclosure of some unhelpful information.").

Section 2703(d) requires the government to show only "reasonable grounds to believe that the. . . records or other information sought . . . are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Further, as Judge O'Grady wrote, "The government need not show actual relevance, such as would be required at trial." *Twitter District Court Decision*, 830 F. Supp. 2d at 130. Moreover,

> all evidence exists in a factual context, and to understand evidence one must understand its context. Some amount of what [might otherwise be] consider[ed] "overbreadth" is always necessary to establish context for facts that are indisputably relevant and material. The probability that some gathered information will not be material is not a substantial objection at this stage.

*Id.*

Finally, "the notion that the government must determine the scope of a § 2703 order with great precision before the order can be issued is quite incorrect." *Id.* Rather, "[t]he purpose of a criminal investigation is to find out whether crimes have occurred; to find out whether crimes have occurred, the government must conduct a factual investigation." *Id.* To restrict the government's inquiry, as Warner Media proposes, "would impose a significant and unjustified burden on law enforcement." *Id.* Because the Turner Order is supported by "specific and articulable facts" that demonstrate that there "are reasonable grounds to believe that the records or other information sought, are relevant and material to an ongoing criminal investigation," and is carefully tailored in scope and time as determined by Judge Buchanan, this Court should find that Judge Buchanan's findings are not "clearly erroneous or contrary to law" and reject Warner Media's challenge.

B. Judge Buchanan Correctly Ruled That The Turner Order
   Does Not Implicate Substantial First Amendment Interests

Citing the "protect[ion] of both the identity of news sources and the editorial processes of

news organizations" as vital First Amendment interests, Warner Media claims that Judge

Buchanan erred in "incorrect[ly] conclu[ding] that Warner Media's First Amendment interests

are minimal..." Appeal at 7, 9. It further claims that those First Amendment interests

"mandate[] that the order be carefully tailored to obtain relevant information." *Id.* at 8. Yet

Warner Media has failed to present a viable First Amendment claim, and therefore these

arguments are without merit and should be dismissed because they fail to establish that Judge

Buchanan's findings were "clearly erroneous or contrary to law."

Although Warner Media argues that it is not asserting a "blanket privilege" (Appeal at 13

n.9), in effect, it is attempting to curtail the government's ability to obtain non-content records

under the guise of a meritless First Amendment claim.

In *Branzburg v. Hayes*, 408 U.S. 665 (1972), the Supreme Court rejected claims of

privilege by reporters who had been called to testify before a grand jury about criminal conduct

involving confidential sources. *Id.* at 667-79, 708-09. The Court "decline[d]" to "interpret[] the

First Amendment to grant newsmen a testimonial privilege that other citizens do not enjoy." *Id.*

at 690. "[W]e cannot," the Court explained, "seriously entertain the notion that the First

Amendment protects a newsman's agreement to conceal the criminal conduct of his source, or

evidence thereof, on the theory that it is better to write about crime than to do something about

it." *Id.* at 692. The Court accordingly "insist[ed] that reporters, like other citizens, respond to

relevant questions put to them in the course of a valid grand jury investigation or criminal trial,"

even if doing so would require revealing the identity of a confidential source. Id. at 690-91.

Further, the Supreme Court expressly rejected any requirement that the government

16

"demonstrate[] some 'compelling need' for a newsman's testimony" as a prerequisite to obtaining it. *Id.* at 708; *see also id.* at 680, 705-706.

The Supreme Court recognized that "[f]air and effective law enforcement aimed at providing security for the person and property of the individual is a fundamental function of government," *Branzburg*, 408 U.S. at 690, and found that none of the constitutional and policy concerns advanced in support of a reporter's privilege justified allowing reporters to refuse to testify in criminal proceedings, *id.* at 679-708. The Court further explained that "the Constitution does not, as it never has, exempt the newsman from performing the citizen's normal duty of appearing and furnishing information relevant to the grand jury's task." *Id.* at 691.

In particular, the Court rejected the argument that if reporters are "forced to respond to subpoenas and identify their sources or disclose other confidences, their informants will refuse or be reluctant to furnish newsworthy information in the future." *Id.* at 682. The Court reasoned that the "preference for anonymity" of informants who "desire to escape criminal prosecution" is "hardly deserving of constitutional protection." *Id.* The Court did not limit its holding to news sources who themselves have committed crimes, but extended it also to cover confidential sources with information about illegal conduct by others. *Branzburg*, 408 U.S. at 693-695.[11]

Similarly, the Fourth Circuit has recognized that *Branzburg* "in no uncertain terms rejected the existence of a 'First Amendment testimonial privilege, absolute or qualified, that

---

[11] The Supreme Court has consistently adhered to the holding and reasoning of *Branzburg. See, e.g., Cohen v. Cowles Media Co.*, 501 U.S. 663, 669 (1991) (explaining that "the First Amendment [does not] relieve a newspaper reporter of the obligation shared by all citizens to respond to a grand jury subpoena and answer questions relevant to a criminal investigation, even though the reporter might be required to reveal a confidential source"); *University of Pa. v. EEOC*, 493 U.S. 182, 201 (1990) (explaining that *Branzburg* "rejected the notion that under the First Amendment a reporter could not be required to appear or to testify as to information obtained in confidence without a special showing that the reporter's testimony was necessary").

protects a reporter from being compelled to testify by the prosecution or the defense in criminal proceedings about criminal conduct that the reporter personally witnessed or participated in, absent a showing of bad faith, harassment, or other such non-legitimate motive, even though the reporter promised confidentiality to his source.'" *United States v. Sterling*, 724 F.3d 482, 492 (4th Cir. 2013) (quoting *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1146 (D.C. Cir. 2006)).

In *Sterling*, the Fourth Circuit reversed a district court order quashing a subpoena for a reporter's testimony on the ground that although the testimony was relevant, it was unnecessary in light of other evidence in the government's possession. The Fourth Circuit explained that both the majority and Justice Powell's concurring opinion in <u>Branzburg</u> had rejected a requirement that the government satisfy a compelling-interest test substantially identical to the one the district court adopted and had also rejected the policy arguments Sterling advanced in support of his claimed privilege. *Sterling*, 724 F.3d at 495.[12]

Further, the Fourth Circuit has also held that <u>Branzburg</u> is controlling in the context of grand jury subpoenas seeking the production of records that arguably implicate First Amendment

---

[12] Warner Media argues in its motion that *Sterling* should not "dictate the result of this motion." Appeal at 14 & n.11. This argument is without merit. First, although, as Warner Media argues, the Fourth Circuit did not directly address the standard for a § 2703(d) order, the discussion focused on a more invasive law enforcement action: compelling a reporter to give testimony about confidential sources. *Sterling*, 724 F.3d at 490, 492 (holding that "[t]here is no First Amendment testimonial privilege, absolute or qualified, that protects a reporter from being compelled to testify"). Surely, *Sterling* is therefore controlling in the matter before this Court, where the government merely seeks non-content records that are also obtainable through subpoena. Moreover, Warner Media appears to suggest that unlike in *Sterling*, where compliance was tied to a legitimate law enforcement need, the Turner Order is not. Appeal at 14 & n.11. For the reasons articulated above, this argument is without merit, as Warner Media has no statutory basis for raising a relevancy or materiality claim, and has never reviewed the government's *ex parte* application, which the Court's review will confirm readily satisfies the applicable requirements.

interests. In a case cited by Warner Media, *In re Grand Jury 87-3 Subpoena Duces Tecum*, 955

F.2d 229 (4th Cir. 1992), the Fourth Circuit refused to apply a "substantial relationship" test in

reviewing grand jury subpoenas requiring the production of a broad range of corporate records

by distributors of sexually explicit films. *Id.* at 234.

Relying on *Branzburg* and other decisions, the Fourth Circuit held that the prior

determinations of the Supreme Court and District Court that the records sought were relevant

under the generally applicable relevance standard for grand jury subpoenas eliminated any First

Amendment concern. *Id.* (*citing United States v. R. Enterprises*, 498 U.S. 292, 302 (1991)

(upholding the same subpoenas because there was a "reasonable possibility that the business

records [of the companies] would produce information relevant to the grand jury's

investigation," and remanding to the Fourth Circuit to address the First Amendment challenge)).

Although the Fourth Circuit refused to apply a heightened standard for grand jury

subpoenas implicating the First Amendment, it cautioned district courts to apply with "special

sensitivity" to such subpoenas the generally-applicable rule precluding "arbitrary fishing

expeditions" and "harass[ment]." *In re Grand Jury 87-3 Subpoena Duces Tecum*, 955 F.2d at

234; *see also Branzburg*, 408 U.S. at 707-08 (leaving open the possibility that a motion to quash

may be warranted where the government's investigation is conducted in bad faith, and where the

government harasses members of the news media).

In light of the foregoing authorities, it is clear that Judge Buchanan appropriately found

that Warner Media's First Amendment claims were baseless. The authorities discussed above

establish that the news media has no special privilege under the First Amendment in responding

to valid legal process issued in aid of a criminal investigation. In the context of grand jury

subpoenas, the law requires nothing more than the good-faith application of the generally-

applicable standard, under which a subpoena must be upheld "unless there is no reasonable

possibility that the category of materials the Government seeks will produce information relevant

to the general subject of the grand jury's investigation." *R Enterprises*, 498 U.S. at 301.

It necessarily follows that the same rule must apply to § 2703(d) orders, which, unlike

subpoenas, are issued only after a judicial officer has found, based on "specific and articulable

facts," "reasonable grounds to believe that . . . the records or other information sought . . . are

relevant and material to an ongoing criminal investigation."  In the context of § 2703(d), the

government's good-faith satisfaction of that statutory requirement is sufficient to address any

arguable First Amendment concerns, particularly, where, as here, the information to be produced

consists of non-content records[13] such as names and records of session times and duration, which

are frequently obtained by subpoena, bypassing judicial scrutiny altogether. *See Clenney*, 631

F.3d at 666.

Even applying the applicable § 2703(d) standard with "special sensitivity," as Warner

Media urges (Appeal at 2, 13, and 18), this Court will conclude, just as Judge Buchanan did, that

Judge Davis correctly found that the Turner Order is supported by "specific and articulable facts"

and that it is carefully tailored both in terms of time and scope.  The First Amendment requires

nothing more.  Although Warner Media expresses general concerns about the possible chilling

effects that could result from requests for information about confidential sources and newsroom

discussions (Appeal at 11), the Supreme Court dismissed precisely the same concerns in refusing

to give reporters special First Amendment status in *Branzburg*. *See* 408 U.S. at 691 (requiring

reporter to comply with grand jury subpoena "involves no restraint on what newspapers may

---

[13] Warner Media contends that internal distribution email lists "closely resemble subject headers," which are often considered "content" under the Stored Communications Act.  Appeal at 12.  However, Warner Media offers no legal authority in support of this claim.

publish or on the type or quality of information reporters may seek to acquire, nor does it

threaten the vast bulk of confidential relationships between reporters and their sources").

And, here, where the government's request is limited to a discrete set of non-content

records relating to emails, any arguable chilling effect is necessarily even less pronounced than

the effect alleged and dismissed by the Supreme Court in *Branzburg*, where the challenged

subpoenas required reporters to appear before a grand jury in person to testify about, among

other things, their interactions with sources.[14] *See In re: s 2703(d) Order; 10GJ3793*, 787 F.

---

[14] The cases cited by Warner Media about possible intrusion into the "newsgathering, deliberating, editing, and publishing processes" are readily distinguishable. *See* Appeal at 10. In *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241 (1974), for example, the Supreme Court struck down a Florida law granting "a political candidate a right to equal space to answer criticism and attacks on his record by a newspaper, and making it a misdemeanor for the newspaper to fail to comply," finding it in violation of the First Amendment. *Id.* at 258. A law compelling newspapers to publish particular content is a far cry from a carefully-tailored court order requiring a discrete production of non-content records relating to a single email account in aid of a criminal investigation. *Branzburg* makes clear that the public interest in law enforcement justifies its good-faith use of even more intrusive investigative tools, such as grand jury subpoenas for reporter testimony, which "involve[] no restraint on what newspapers may publish or on the type or quality of information reporters may seek to acquire." 408 U.S. at 691.

Similarly, Warner Media's discussion of the Privacy Protection Act ("PPA"), 42 U.S.C. § 2000aa (Appeal at 20), is irrelevant here. The PPA limits under certain circumstances search and seizure of two categories of information, "work product materials" and "documentary materials," but the information sought by the United States here does not fall within either of these categories. *See* 42 U.S.C. § 2000aa(a) & (b) (regulating searches and seizures of work product materials and documentary materials), 2000aa-7(a) & (b) (defining these terms). The non-content information sought by the United States is not "work product materials" because it does not "include mental impressions, conclusions, opinions, or theories of the person who prepared, produced, authored, or created such material." 42 U.S.C. § 2000aa-7(b). It is not "documentary materials" because the limited non-content information sought by the United States is not "materials upon which information is recorded, [including but] not limited to, written or printed materials, photographs, motion picture films, negatives, video tapes, audio tapes, and other mechanically, magnetically or electronically recorded cards, tapes, or discs." 42 U.S.C. § 2000aa-7(a). Moreover, even if the Court were to find that the non-content information sought by the United States constitutes "documentary material," the PPA prohibits searches and seizures like the one in *Zurcher v. Stanford Daily*, 436 U.S. 547 (1978), not use of compulsory process. Indeed, the PPA explicitly endorses use of compulsory process to obtain documentary

Supp. 2d at 438 (finding "no cognizable First Amendment violation" where petitioners fail to demonstrate how a § 2703(d) order, which did not seek to "control or direct the content" of a First Amendment right, had a "chilling effect"); *see also Twitter District Court Decision,* 830 F. Supp. 2d at 145-46 (Judge O'Grady refusing to engage in further First Amendment review after petitioner failed to "introduce[] evidence that harassment or intimidation had occurred" and did not establish how First Amendment rights were "impinged" as a result of a § 2703(d) order served on a service provider). It is therefore no surprise that Judge Buchanan similarly dismissed Warner Media's First Amendment concerns. Exhibit 10, Oct. 26, 2020 Hr'g Tr. 7:25 - 8:1 (dismissing Warner Media's First Amendment claims because the scope of the Turner Order "is a relatively small period in time" and because the government is seeking "noncontent material").

Finally, Warner Media does not allege and cannot show that the government acted in bad faith in seeking judicial approval of the Turner Order. As noted earlier, the government's application for the Turner Order was vetted pursuant to the Department's Media Policy protocols, where every facet of both the criminal investigation and the government's need for the records are challenged and rigorously reviewed. After receiving Attorney General authorization to proceed, the government submitted its Application to Magistrate Judge Davis, who assessed the legitimacy of the government's facts before issuing the Turner Order.

Upon review, Magistrate Judge Davis concluded that the government "offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought, are relevant and material to an ongoing criminal investigation." Turner Order. Even after serving Warner Media with the Turner Order, the government agreed

---

materials. *See* 42 U.S.C. § 2000aa(b)(4). Here, in stark contrast to *Zurcher*, a legal instrument, the Turner Order, was issued by a judicial authority and properly served on Warner Media.

to an initial extension of 30 days, and it carefully considered every subsequent request for additional time and narrowing of the Turner Order's scope.  Accordingly, the government has acted in good faith throughout, and Warner Media has presented no argument or evidence to the contrary.

### Conclusion

In light of Exhibits 1, 5A, and 8A, Judge Buchanan's decision was amply supported by the facts in the record.  There is no basis upon which this Court could be left with the "definite and firm conviction that a mistake has been committed." *In Re Capital One Consumer Data Breach Litigation*, 2020 WL. 3470261 at *2; *Attard Indus., Inc.,* 2010 WL 2010 WL 3069799 at *1.  Indeed, even under *de novo* review, Judge Buchanan's decision should be upheld.  *See Twitter District Court Decision*, 830 F. Supp. 2d at 122 n.7 (holding in the alternative that if the production order were subject to *de novo* review, it still would "survive the more demanding scrutiny").

<<

<<

<<

<<

<<

<<

<<

<<

<<

<<

23

Accordingly, for the reasons stated above, the Court should find that Judge Buchanan's decision was not clearly erroneous or contrary to law, and deny Warner Media's appeal.

Dated: November 30, 2020

Respectfully submitted,

John C. Demers
Assistant Attorney General
National Security Division
United States Department of Justice

G. Zachary Terwilliger
United States Attorney

_____
David Lim
Trial Attorney
Special Assistant United States Attorney
Virginia Bar No. 99999
Attorney for the United States
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 598-3449
David.Lim2@usdoj.gov

_____
Gordon D. Kromberg
Assistant United States Attorney
Virginia Bar No. 33676
Attorney for the United States
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700
(703) 837.8242 (fax)
gordon.kromberg@usdoj.gov

<u>List of Government Exhibits</u>

1.    July 14, 2020:  Government's *Ex Parte* Application for Order Pursuant to 18 U.S.C.
§ 2703(d)

2.    July 15, 2020:  Order by U.S. Magistrate Judge Ivan D. Davis Pursuant to 18 U.S.C.
§ 2703(d) ("Turner Order")

3.    August 27, 2020:  Order by U.S. Magistrate Judge Theresa Carroll Buchanan,
Granting Warner Media's Motion to Extend Time for Compliance

4.    September 11, 2020:  Warner Media's Motion to Quash or Modify Turner Order

5.    September 24, 2020:  Government's Response in Opposition to Warner Media's Motion
to Quash or Modify Turner Order

5A.    September 24, 2020:  Ex Parte Classified Declaration Submitted through the CISO

6.    September 30, 2020:  Warner Media's Reply in Support of Motion to Quash or Modify
Turner Order

7.    October 7, 2020:  Order Granting Warner Media's Motion to Quash or Modify Turner
Order

8    October 9, 2020:  Government's Motion for Reconsideration of October 7, 2020 Order

8A.    October 9, 2020 Ex Parte Supplemental Classified Declaration

9.    October 22, 2020:  Warner Media's Opposition to Government's Motion for
Reconsideration

10.    October 26, 2020:  Transcript of Sealed Hearing on Motion for Reconsideration

11.    October 26, 2020:   Order by U.S. Magistrate Judge Theresa Carroll Buchanan Granting
Government's Motion for Reconsideration

12.    November 2, 2020 Order Granting Warner Media's Motion to Stay

13.    November 23, 2020 Order Extending Stay through the Hearing on the Appeal