UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| IN RE: APPLICATION OF THE UNITED STATES OF AMERICA FOR ORDER PURSUANT TO 18 U.S.C. § 2703(d) | **UNDER SEAL**<br><br>Case No. 1:19-ec-1275 (IDD) |

## MOTION TO QUASH OR MODIFY ORDER
## ISSUED PURSUANT TO 18 U.S.C. § 2703(d)

Warner Media, LLC respectfully moves the Court to quash or modify its Order of July 15, 2020, issued pursuant to 18 U.S.C. § 2703(d). Enforcing the Order as it is currently framed would compel Warner Media to produce information for *all* emails sent or received during a two-month period by a veteran national security reporter working for CNN. That sweeping request captures more than 34,000 communications. Most of those records, however, likely have no connection to the government's investigation. And compelling the disclosure of that information would give the government significant access to the reporter's newsgathering activities—including all news sources that she contacted by email during that period—and the inner workings of a large news organization. Warner Media made good faith proposals to the government in an attempt to narrow the Order's expansive scope, but the government rejected those proposals, insisting on access to two months' worth of a journalist's email headers, which includes both internal communications solely within CNN and communications with a myriad of third parties. Requiring Warner Media to provide the government that information would violate the mandate under both § 2703(d) and the First Amendment that an Order for a reporter's communication records be carefully tailored to compel the disclosure of only information that is relevant to the government's investigation.

Warner Media therefore respectfully requests that the Court quash its Order or, at a minimum, narrow the Order to compel the production of only information that is reasonably likely to be relevant to the government's investigation. Alternatively, the government should be required to narrow its request so that it is more carefully calibrated to obtain relevant information, *i.e.*, by using specific email addresses or other limitations to focus the Order on information that is reasonably likely to be relevant to the government's investigation.

## BACKGROUND

On July 17, 2020, Warner Media was served this Court's Order under 18 U.S.C. § 2703(d), requiring Warner Media to produce records and other information related to the account "Barbara.starr@turner.com" ("the account") for the period "between June 1, 2017 to July 31, 2017." That account belongs to Barbara Starr, a veteran national security and defense reporter currently employed by CNN, a subsidiary of Warner Media. *See* Ex. A, Decl. of Stephanie Abrutyn in Supp. of Mot. to Quash or Modify ("Abrutyn Decl.") ¶ 3. The Order directs production of extensive information about the account, including subject headers,[1] log files, dates and times, data transfer volumes, user names, and Internet protocol ("IP") addresses "for each connection made to or from the Account," as well as "[i]nformation about each communication sent or received by the Account," including dates and times, method of communication, and source/destination information such as email addresses, IP addresses, and telephone numbers. The Order does not articulate the justification for the government's

---

[1] Although the Order states that it does not seek the "contents of communications," it requires the production of "subject headers." Courts agree, however, that an email's subject line is "content" under § 2703. *See, e.g., Optiver Australia Pty. Ltd. & Anor. v. Tibra Trading Pty. Ltd. & Ors.*, No. 12-MC-80242 EJD PSG, 2013 WL 256771, at *2 (N.D. Cal. Jan. 23, 2013) ("It is clear from the purpose and nature of the subject line that it is 'content' intended to fall under the protection of the SCA.").

2

expansive request. The government has orally represented, however, that Starr is not a target of its investigation.

After receiving the Order, Warner Media diligently endeavored to identify responsive records. Abrutyn Decl. ¶ 4.[2] Warner Media's efforts have revealed that the Order, as currently framed, would direct the disclosure of information related to 34,347 emails from the account. Abrutyn Decl. ¶ 6. Most, if not all, of that information is likely unrelated to the government's investigation, and at the same time, much of it reflects the inner workings of CNN, a large news organization, including its editorial, deliberative, and newsgathering processes. For example, over 26,000 emails covered by the Order are among only CNN or Warner Media employees. Abrutyn Decl. ¶ 7. In addition, thousands of communications captured by the Order are to and from personal (i.e., non-commercial, non-government) email accounts, or communications with government or military email addresses, that would bear directly on Ms. Starr's newsgathering activities by identifying, among other things, all her news sources with whom she communicated by email during the two-month period, when she communicated with them, and the frequency of those communications. Abrutyn Decl. ¶¶ 8-10. During the two-month period covered by the Order, Ms. Starr worked on numerous different news stories, publishing more than fifty news articles on numerous topics and appearing on television or radio in her professional capacity on more than 150 occasions. Abrutyn Decl. ¶ 9.

---

[2]   The Order initially required Warner Media to provide responsive records by July 25, 2020, ten days after the Order's issuance. The government agreed to a 30-day extension of that deadline, but refused to agree to a further extension unless Warner Media committed (1) to produce some materials by the August 25, 2020 deadline, or (2) to provide a concrete proposal regarding future productions. Warner Media then filed a motion to extend the time to respond to the Order on August 24, 2020. On August 27, 2020, the court extended the deadline to respond to the Order to September 11, 2020.

3

Warner Media conferred with the government in an attempt to narrow the Order's expansive scope. The government was unwilling to agree to any of the limitations proposed by Warner Media to address the Order's First Amendment and overbreadth issues. Warner Media now moves to quash or modify the Order. The government does not consent to the requested relief.

## ARGUMENT

The Order directs a news organization to produce to the government information related to every email communication that its veteran reporter sent or received during a two-month period. The Order is not tailored to reach only those communications that are reasonably likely to be relevant to the investigation. The sweeping scope of the government's record request here—which, unlike most § 2703(d) requests, is directed at a journalist's email account—raises serious First Amendment concerns. In light of the sensitive First Amendment interests implicated by the Order, § 2703(d) requires a more targeted approach. Accordingly, the Court should either quash the Order or narrow the Order to compel the production of only information that is reasonably likely to be relevant to the government's investigation. Alternatively, the government should be ordered to tailor its request to ensure that it is properly calibrated to obtain information that is reasonably likely to be relevant to the government's investigation, thereby minimizing the burden on the significant First Amendment interests at stake.

I. **SECTION 2703(D) ORDERS MUST BE CAREFULLY TAILORED TO OBTAIN RELEVANT INFORMATION, PARTICULARLY WHEN THEY IMPLICATE FIRST AMENDMENT INTERESTS**

   A. **Section 2703(d) Imposes A Strict Relevancy Requirement And Forbids Fishing Expeditions**

Section 2703(d) authorizes a court to order disclosure of information "only if the governmental entity offers specific and articulable facts showing that ... the records or other

information sought[] are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). The "specific and articulable facts showing" imposes a standard that is higher than that required for a subpoena. *See In re Applications of the United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, 206 F. Supp. 3d 454, 455-456 (D.D.C. 2016). A court may quash or modify a § 2703(d) order "if the information or records requested are unusually voluminous in nature or compliance with such order otherwise would cause an undue burden." 18 U.S.C. § 2703(d).

Section 2703(d) does not tolerate "government fishing expeditions" or permit courts to order disclosure based on conclusory government assertions. *See In re Applications of the United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, 206 F. Supp. 3d at 456; *see also United States v. Alahmedalabdaloklah*, No. 12-CR-01263-PHX-NVW, 2017 WL 2839645, at *6 (D. Ariz. July 3, 2017) (same). As the 1994 House Judiciary Committee Report for the Communications Assistance for Law Enforcement Act explained, the "specific and articulable facts" language was specifically added to "rais[e] the standard for access to transactional data ... to guard against 'fishing expeditions' by law enforcement." H.R. Rep. No. 103-827, at 31-32 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3489, 3511-3512. Thus, as the Ninth Circuit articulated in the warrant context, "[a]lthough computer technology may in theory justify blanket seizures ..., the government must still demonstrate ... factually why such a broad search and seizure authority is reasonable in the case at hand." *United States v. Hill*, 459 F.3d 966, 975 (9th Cir. 2006). In other words, "there must be some threshold showing before the government may 'seize the haystack to look for the needle.'" *Id.* For that reason, courts have refused to use § 2703(d) to compel the production of non-content information when the government's broad request was "not sufficiently tailored" to obtain information that was "actually 'relevant and

material' to [an] investigation." *In re Application of United States for an Order Authorizing Disclosure of Historical Cell Site Info. for Tel. No.*, 20 F. Supp. 3d 67, 74 (D.D.C. 2013).

### B. The First Amendment Similarly Commands That § 2703(d) Orders Must Be Carefully Tailored To Compel The Production Of Relevant Information

The First Amendment separately and additionally requires that a § 2703(d) order be carefully tailored when the information sought relates to media activities. In *Branzburg v. Hayes*, 408 U.S. 665 (1972), the Supreme Court recognized that, even in the criminal setting, journalists' newsgathering processes do not lack First Amendment protection and must be treated with sensitivity. Although the Court held in *Branzburg* that reporters do not have a blanket privilege that excuses them from complying with grand jury subpoenas to testify, *id.* at 690-691, it recognized that First Amendment concerns would be implicated if a subpoena (or other compulsory process) were issued to a reporter seeking documents unrelated to the investigation. That concern was not presented in *Branzburg*, however, because "[n]othing in the record indicate[d] that these grand juries were 'probing at will and without relation to existing need.'" *Id.* at 700 (alteration omitted).

Justice Powell's concurring opinion in *Branzburg* similarly recognized that the First Amendment imposes constraints on the use of compulsory process to obtain information from reporters, explaining that

> if the newsman is called upon to give information bearing only a remote and tenuous relationship to the subject of the investigation, or if he has some other reason to believe that his testimony implicates confidential source relationships without a legitimate need of law enforcement, he will have access to the court on a motion to quash and an appropriate protective order may be entered.

*Branzburg*, 408 U.S. at 710 (Powell, J., concurring). In circumstances where many of the requested materials appear to have no relation to the government's investigation, a reporter's opposition to compulsory process "should be judged on its facts [on a case-by-case basis] by the

6

striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct." *Id.*

The Fourth Circuit has similarly made clear that First Amendment interests must be protected from overbroad document requests that encompass materials unrelated to an underlying investigation. In *United States v. Sterling*, 724 F.3d 482 (4th Cir. 2013), the Fourth Circuit confirmed that courts must consider reporters' First Amendment interests when a subpoena is not "based on a legitimate need of law enforcement." *Id.* at 496. Although the court split from several other circuits and held that, in the criminal context, reporters do not have a privilege to refuse to comply with subpoenas seeking specific and indisputably relevant testimony about their sources, *see id.* at 495,[3] it did not broadly hold that the process of newsgathering lacks all First Amendment protection. Nor did it authorize a general rummaging by the government into a reporter's communications—be they with sources, editors, or others—without regard to whether those communications were relevant to the government's investigation.[4]

---

[3] The Second, Third, and Eleventh Circuits, by contrast, have recognized a qualified reporter's privilege in criminal cases. *See United States v. Capers*, 708 F.3d 1286, 1303 (11th Cir. 2013); *United States v. Treacy*, 639 F.3d 32, 42-43 (2d Cir. 2011); *United States v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir. 1980); *see also United States v. Foote*, No. 00-CR-20091-01-KHV, 2002 WL 1822407, at *1 (D. Kan. Aug. 8, 2002) (recognizing reporter's privilege in a criminal case).

[4] For several reasons, *Sterling*'s narrow holding does not dictate the result of this motion. First, *Sterling* did not address the standards for § 2703(d) orders—which can be exceptionally broad and, as shown in this case, can call for tens of thousands of records—or the extent to which the First Amendment imposes limits on those orders. It addressed only whether a reporter could be compelled to testify narrowly about his confidential sources (in that case, likely a single source) at a criminal trial. 724 F.3d at 490. Second, there was no indication in *Sterling* that the reporter was being compelled to testify about confidential sources without a legitimate law enforcement need—the government only sought to compel the reporter to testify about his source related to a specific piece of information, the disclosure of which formed the basis for the criminal charges at issue in the trial. *See id.* at 490, 498-499. Third, the court held that even if there were a qualified reporter's privilege, the government had satisfied its burden to overcome

7

Indeed, in other decisions, the Fourth Circuit has emphasized that the First Amendment imposes certain limits on compulsory process in the criminal context, stressing that a district court was correct to ensure that "subpoenas were properly 'tailored' and that the documents [sought] were relevant." *In re Grand Jury 87-3 Subpoena Duces Tecum*, 955 F.2d 229, 234 (4th Cir. 1992). The court explained that such tailoring was necessary under *Branzburg* to "balance the possible constitutional infringement and the government's need for documents when it rules on the motion to quash." *Id.* The Fourth Circuit also emphasized that it was "not prepared to rubber-stamp every subpoena" that might interfere with protected "expressive activities." *Id.* It instead "caution[ed] district courts to apply with special sensitivity, where [First Amendment interests] are potentially implicated, the traditional rule that '[prosecutors] are not licensed to engage in arbitrary fishing expeditions.'" *Id.*[5]

In sum, both the text of § 2703(d) and the First Amendment mandate that a § 2703(d) order must be carefully tailored to compel the production of only those documents that are likely to be relevant to the government's investigation.

---

that privilege. *See id.* at 505-510. In particular, the court explained that "[t]here [was] no dispute that the information sought from [the reporter was] relevant." *Id.* at 506. The government cannot make that showing here—that *all* of the information sought by the § 2703(d) order, information relating to tens of thousands of emails over a two-month period, is relevant to a legitimate criminal investigation.

[5]   *See also In re Grand Jury Subpoena: Subpoena Duces Tecum*, 829 F.2d 1291, 1296, 1299 (4th Cir. 1987) (recognizing that First Amendment interests "heighten[] the concern about burdensomeness" when analyzing the breadth of a criminal subpoena, and cautioning that "a court must not give short shrift to the party asserting private constitutional rights"); *Ealy v. Littlejohn*, 569 F.2d 219, 227 (5th Cir. 1978) (recognizing "that the First Amendment can serve as a limitation on the power of the grand jury to interfere with a witness' freedoms of association and expression" and that "courts are not powerless to act" when the government "goes on a fishing expedition in forbidden waters"); *Convertino v. U.S. Dep't of Justice*, No. 07-CV-13842, 2008 WL 4104347, at *10 (E.D. Mich. Aug. 28, 2008) (recognizing that even where "First Amendment interests are not a complete bar to disclosure," "the potential adverse effects on news gathering activities, posed by an order compelling disclosure of a confidential source, suggests that an order to disclose should be as narrow as possible").

## II. THE ORDER IS NOT CAREFULLY TAILORED TO COMPEL THE PRODUCTION OF RELEVANT INFORMATION, AS REQUIRED BY § 2703(D) AND THE FIRST AMENDMENT

### A. In Targeting A Media Account, The § 2703(d) Order Implicates Substantial First Amendment Interests

As an initial matter, it is beyond dispute that the Order relates to core First Amendment protections. The U.S. Constitution recognizes a paramount public interest in the maintenance of a vigorous, aggressive, and independent press capable of participating in robust, unfettered debate over controversial matters. *See, e.g., New York Times v. Sullivan*, 376 U. S. 254, 269-271 (1964). As Justice Black explained, "[i]n the First Amendment the Founding Fathers gave the free press the protection it must have to fulfill its essential role in our democracy.... The press was protected so that it could bare the secrets of government and inform the people." *New York Times Co. v. United States*, 403 U.S. 713, 717 (1971) (Black, J., concurring). Informed public opinion, as the Supreme Court has recognized, "is the most potent of all restraints upon misgovernment." *Grosjean v. American Press Co.*, 297 U.S. 233, 250 (1936); *see also Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 492 (1975) ("Without the information provided by the press most of us and many of our representatives would be unable to vote intelligently or to register opinions on the administration of government generally.").

To ensure that the public will enjoy the benefits of informed public debate, the First Amendment protects the press from unwarranted governmental intrusion into the newsgathering, deliberating, editing, and publishing processes. *See Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 254-256 (1974). Those protections apply with particular force to "the exercise of editorial control and judgment," which includes "[t]he choice of material to go into a newspaper ... and treatment of public issues and public officials—whether fair or unfair." *Id.* at 258. As the Fourth Circuit has explained, the First Amendment "protect[s] a news outlet's editorial perspective or the way its beat reporters cover" a potential story; in other words, "the very

6

'choice of material to go into a newspaper' garners independent constitutional protection." *Washington Post v. McManus*, 944 F.3d 506, 518 (4th Cir. 2019) (quoting *Tornillo*, 418 U.S. at 258).

The Fourth Circuit has also recognized that "[n]ews reporters are 'entitled to some constitutional protection of the confidentiality of [their] sources'" because those "protection[s] [are] necessary to ensure a free and vital press, without which an open and democratic society would be impossible to maintain." *Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 287 (4th Cir. 2000). The routine production of records revealing news sources, the court explained, would restrain "the free flow of newsworthy information," "and the public's understanding of important issues and events would be hampered in ways inconsistent with a healthy republic." *Id.* As the Third Circuit has recognized, "the interrelationship between newsgathering, news dissemination and the need for a journalist to protect his or her source is too apparent to require belaboring." *Riley v. City of Chester*, 612 F.2d 708, 714 (3d Cir. 1979).[6]

---

[6] *See also Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29, 35 (2d Cir. 1999) (noting "'the important interests of reporters and the public in preserving the confidentiality of journalists' sources'"); *United States v. LaRouche Campaign*, 841 F.2d 1176, 1181 (1st Cir. 1988) (observing that the "disclosure of [confidential sources or information] would clearly jeopardize the ability of journalists and the media to gather information and, therefore, have a chilling effect on speech"); *Zerilli v. Smith*, 656 F.2d 705, 710-711 (D.C. Cir. 1981) (noting that "news gathering is essential to a free press" and that "the press' function as a vital source of information is weakened whenever the ability of journalists to gather news is impaired"); *Baker v. F & F Inv.*, 470 F.2d 778, 782 (2d Cir. 1972) (noting the "[c]ompelled disclosure of confidential sources unquestionably threatens a journalist's ability to secure information that is made available to him only on a confidential basis" and "[t]he deterrent effect such disclosure is likely to have upon future 'undercover' investigative reporting ... threatens freedom of the press").

### B. The Order Is Overbroad Because Enforcement Would Result In The Production Of Information For Tens Of Thousands Of Emails Unrelated To The Government's Investigation

Compliance with the Order as written would result in the production of information relating to 34,347 emails on myriad topics. It is almost certainly the case that most of that information has no connection to the underlying criminal investigation. Those communications include all email communications Ms. Starr had with every one of her contacts during that two-month period as well as internal CNN and Warner Media emails. *See* Abrutyn Decl. ¶¶ 6-89. Moreover, those communications, to varying degrees, relate to the more than 50 articles she published during that time, as well as to countless articles she was likely working on that were not yet or may never have been published. *See id.* ¶ 9. The government has in no way attempted to tailor its request to its investigation and has instead asserted the right to obtain information about every email Ms. Starr sent or received during a two-month period (and by extension, every story that Ms. Starr was working on during that time). Permitting the government to obtain those records without undertaking some effort to tailor its request to information that is at least reasonably likely to be relevant to the government's investigation would sanction an invasive and impermissible fishing expedition into newsgathering activities that are completely unrelated to the government's investigation.

Other courts have refused similarly broad government requests to compel the production of information when it was clear that the information sought was unrelated to the underlying investigation. The District Court for the District of Columbia, for example, found that a government request under § 2703(d) for 120 days' and 7 days' worth of non-content information from separate accounts was "not sufficiently tailored to be actually 'relevant and material' to [an] investigation" because the government only "alleg[ed] that an individual may have been involved in a specific crime on a specific date and at a specific time." *In re Application of*

11

*United States for an Order Authorizing Disclosure of Historical Cell Site Info. for Tel. No.*, 20 F. Supp. 3d at 74. That the government was investigating a series of crimes that occurred over two months did not justify the broad request without a "specific explanation" for why the government needed information from the requested period. *Id.* at 72. Even outside the First Amendment context, the court explained that "each individual 'record[] or other information' [sought] must be 'relevant and material' to the investigation; otherwise, the government could obtain an entire database of ... information merely because one or some of the entries in that database are 'relevant and material.'" *Id.*

The Order here similarly compels the production of information related to thousands of emails that almost certainly have no relationship to the government's investigation. Section 2703(d) does not permit that expansive request for information untethered from the government's investigation, and certainly not when that information includes the name of every news source contacted by a reporter by email during a two-month period, and the entire timeline of her internal correspondence with other CNN reporters and her editors. *See In re Applications of the United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, 206 F. Supp. 3d at 456.

The First Amendment interests implicated by the Order—including the need to "protect[] ... the confidentiality of [reporter's] sources" and thereby "ensure a free and vital press," *Ashcraft*, 218 F.3d at 287—provide an equally if not more compelling justification for ensuring that the Order is properly tailored to compel the production of only information that is reasonably likely to be relevant to the government's investigation. Here, enforcing the Order as currently framed would allow the government to scrutinize the existence of and timeline for every communication Ms. Starr had with other CNN reporters and her editors during the two-month period, *see* Abrutyn Decl. ¶ 7, as well as the name of every news source who was in email

contact with a reporter for two full months, including when and how often they communicated, *see id.* ¶ 8 (noting that Ms. Starr participated in approximately 7,800 communications with external email accounts and that many relate to newsgathering activities). That information—which, at a minimum, relates to more than 50 news stories, *see id.* ¶ 9—would give the government significant access to the reporter's newsgathering activities (a reporter whose beat includes reporting on the government) and to the inner workings of a large news organization. Allowing the government to obtain that broad swath of information without it even attempting to impose substantive limitations that would ensure that the materials are reasonably likely to be relevant to the underlying investigation is impermissible under the First Amendment. *See In re Grand Jury 87-3 Subpoena Duces Tecum*, 955 F.2d at 234.

The Department of Justice's own regulations demonstrate the Order's overbreadth as currently drafted. Those regulations start with the premise that a § 2703(d) order directed at members of the news media is an "extraordinary measure[]" that should not be undertaken lightly. 28 C.F.R. § 50.10(a)(3). By DOJ regulation, the information sought must be "essential to [a] successful investigation"; court process should not be used to obtain information that is "peripheral" or "nonessential" to the investigation. *Id.* § 50.10(c)(5)(ii)(A). Instead, any subpoena (or similar request) must be "narrowly drawn," "directed at material and relevant information regarding a limited subject matter," and "avoid requiring production of a large volume of material." *Id.* § 50.10(c)(5)(vii). Here, the Order is not "narrowly drawn" to only obtain "essential" information that is "material and relevant ... [to] a limited subject matter," nor does it avoid the production of a large volume of material. To the contrary, the order would force Warner Media to produce information for over 34,000 emails that are mostly, and perhaps entirely, irrelevant, peripheral, and nonessential to the government's investigation.

The Privacy Protection Act ("PPA"), 42 U.S.C. § 2000aa, further underscores the important interests at stake and the need to carefully tailor compulsory process aimed at newsgathering activities. The PPA prohibits the government from "search[ing] for or seiz[ing] documentary materials" or work product "possessed by a person in connection with a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication," unless there is probable cause to believe that person "has committed or is committing the criminal offense to which the materials relate." 42 U.S.C. § 2000aa(a), (b).

That provision was enacted to overturn the Supreme Court's decision in *Zurcher v. Stanford Daily*, 436 U.S. 547 (1978). There, the Court held that the Fourth Amendment permits unannounced searches of a newsroom for evidence that might incriminate a third party as long as the government obtains a warrant. *Id.* at 553-560, 567. The dissent expressed concern that broad searches of reporters' newsgathering materials pursuant to a warrant—whereby the government would be allowed "to ransack the files of a newspaper, reading each and every document until they have found the one named in the warrant"—would "lead to the needless exposure of confidential information completely unrelated to the purpose of the investigation." *Id.* at 573 (Stewart, J., dissenting). Such searches are "inimical to the First Amendment," because they are "bound to have a deterrent effect on the availability of confidential news sources," "diminishing [the] flow of potentially important information to the public." *Id.* The dissent would have required, instead, that the government proceed through narrowly tailored subpoenas, which "would permit the newspaper itself to produce only the specific documents requested," thereby preventing the disclosure of news sources unrelated to the government's investigation. *Id.* Congress passed the PPA to prevent the First Amendment intrusions that *Stanford Daily* otherwise would have condoned. *See* S. Rep. 96-874, at 4-5, 9 (1980).

14

Here, however, by serving an expansive § 2703(d) order on a media account, the government seeks to gain substantial insight into the digital equivalent of a newsroom. The wide-ranging record request would allow the government to sift through all of a reporter's email headers from a two-month period, deciding after the fact what information is relevant to its investigation. Congress's resolve in enacting the PPA to impose limits on the government's ability to search materials related to newsgathering, the heightened standard under § 2703(d), and the First Amendment dictate that compulsory process targeting a news organization must be carefully drawn to obtain relevant information all point to a tailoring requirement that the government has not satisfied here.

A Western District of Wisconsin decision is illustrative of the approach that is warranted here. In *In re Grand Jury Subpoena to Amazon.com Dated Aug. 7, 2006*, 246 F.R.D. 570 (W.D. Wis. 2007), the court narrowed a grand jury subpoena issued to Amazon seeking information about used book buyers in response to First Amendment concerns. *Id.* at 573. The court explained that "it is an unsettling and un-American scenario to envision federal agents nosing through the reading lists of law-abiding citizens while hunting for evidence against somebody else." *Id.* The court also noted that permitting the subpoena would have a chilling effect on e-commerce and other protected activities. *Id.* Accordingly, the court both imposed limits and mandated review procedures that lessened the subpoena's impact on the book sellers' and customers' First Amendment rights. *Id.* (ordering the use of a "filtering mechanism" and other measures to limit the number of Amazon customers impacted); *cf. United States v. Comley*, 890 F.2d 539, 545 (1st Cir. 1989) (rejecting First Amendment challenge to subpoena because of "narrowness with which the subpoena ... is drawn," specifically, it was not "a blanket request for the identities of all of Comley's associates and informants" but instead sought only "tape

15

recordings of a limited number of conversations that took place between two specified individuals"). Imposing substantive limits on the Order (*e.g.*, narrowing to specific email addresses) would ease the First Amendment concerns implicated by the current Order's broad sweep.

## CONCLUSION

For the foregoing reasons, the Court should quash or, in the alternative, narrow the Order issued pursuant to 18 U.S.C. § 2703(d) or, alternatively, direct the government to narrow the scope of the records sought by the Order to only those specific records that are reasonably likely to be relevant to its investigation.

Dated: September 11, 2020

Respectfully submitted,

*[signature]*

Brittany Amadi (VA Bar No. 80078)
Jamie S. Gorelick (DC Bar No. 913384)
   (*pro hac vice* application pending)
Paul R.Q. Wolfson (DC Bar No. 414759)
   (*pro hac vice* application pending)
Aaron Zebley (DC Bar No. 1023653)
   (*pro hac vice*)
Whitney D. Russell (DC Bar No. 987238)
   (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202) 663-6363
brittany.amadi@wilmerhale.com
jamie.gorelick@wilmerhale.com
paul.wolfson@wilmerhale.com
aaron.zebley@wilmerhale.com
whitney.russell@wilmerhale.com

*Counsel for Warner Media LLC*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| IN RE: APPLICATION OF THE UNITED STATES OF AMERICA FOR ORDER PURSUANT TO 18 U.S.C. § 2703(d) | **UNDER SEAL** <br><br> Case No. 1:19-ec-1275 |

## DECLARATION OF STEPHANIE ABRUTYN IN SUPPORT OF MOTION TO QUASH OR MODIFY ORDER ISSUED PURSUANT TO 18 U.S.C. § 2703(d)

I, Stephanie S. Abrutyn, hereby declare under penalty of perjury:

1. I am Senior Vice President & Chief Counsel, Litigation and Public Policy, WarnerMedia. In that role, I lead the team responsible for overseeing and managing litigation for Warner Media, LLC ("Warner Media") and its subsidiaries and brands, including CNN and the Turner networks. Among other things, my team responds to certain government requests for information and other forms of compulsory process.

2. Warner Media was served the above-referenced Order on July 17, 2020.

3. The Order requires the production of information from the email account of Barbara Starr ("the account"), a veteran national security and defense reporter currently employed as a journalist for CNN.

    a. The account is Ms. Starr's only business email account.

    b. Ms. Starr's beat includes reporting on activities by the U.S. government in the areas of defense, military intelligence and actions, and, more broadly, national security.

4. Upon receipt of the Order, Warner Media promptly took steps to preserve data in the account, collect it for review, and begin review of the records.

5. As directed by the Order and the government, Warner Media has not alerted Ms. Starr to the existence of the Order and is thus unable to discuss its response with her.

6. Despite challenges posed by the need to review materials remotely as a result of the coronavirus outbreak and its inability to discuss the materials with Ms. Starr, Warner Media has identified 34,347 emails sent or received by Ms. Starr's account during the period of June 1, 2017, to July 31, 2017 ("the emails").

7. Of those, over 26,000 are internal emails among only employees working as journalists for CNN, or employees of Warner Media, or another Warner Media subsidiary, many of which appear to relate to internal newsgathering activities and editorial processes.

8. Approximately 7,800 of those emails are communications between Ms. Starr's account and external email accounts, many of which were sent or received in the course of her newsgathering activities.

9. During the period of time at issue in the Order, Ms. Starr published more than 50 articles and appeared in her professional capacity on television or radio more than 150 times.

10. Numerous emails are also to or from what appear to be family members, commercial services (e.g., for shopping purchases, travel reservations), or others in relation to personal issues.

I declare under penalty of perjury that the foregoing is true and correct to the best of my understanding and belief. Executed on September 10, 2020.

Stephanie S. Abrutyn
Senior Vice President & Chief Counsel, Litigation and Public Policy, WarnerMedia

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th Day of September, 2020, I filed the foregoing with the Clerk of the Court by hand and caused a true and correct copy of this under seal filing to be served via hand delivery on the following:

Gordon D. Kromberg
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
gordon.kromberg@usdoj.gov

*Attorney for the United States*

Whitney Russell (DC Bar No. 987238)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202) 663-6363

*Counsel for Warner Media LLC*