IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

**UNDER SEAL**

IN RE: APPLICATION OF THE UNITED     )
STATES OF AMERICA FOR ORDER          )     Case No. 1:19-ec-1275 (TCB)
PURSUANT TO 18 U.S.C. § 2703(d)      )

**GOVERNMENT'S RESPONSE IN OPPOSITION TO WARNER MEDIA, LLC'S
MOTION TO QUASH OR MODIFY ORDER
ISSUED PURSUANT TO 18 U.S.C. § 2703(d)**

The United States of America, by and through David Lim, Trial Attorney and Special

Assistant United States Attorney, and Gordon D. Kromberg, Assistant United States Attorney,

submits this brief in opposition to Warner Media, LLC ("Warner Media")'s Motion to Quash or

Modify Order Issued Pursuant to 18 U.S.C. § 2703(d), filed September 11, 2020 (the "Motion to

Quash" or "Mot. to Quash").  The government will additionally file a classified ex parte

addendum with the Classified Information Security Officer ("CISO") for the Court's review.  For

the reasons outlined below, the government requests that the Court deny the motion.

**I.      *Background***

On July 15, 2020, upon an ex parte application[1] by the government, U.S. Magistrate

Judge Ivan D. Davis of the Eastern District of Virginia issued a sealed order pursuant to 18

U.S.C. § 2703(d) (the "Turner Order") directing Warner Media to produce certain non-content

---

[1] As required under the Department of Justice's news media policy, codified at 28 C.FR. § 50.10, prior to submitting its § 2703(d) application to Judge Davis, the government requested and received approval from the Attorney General to proceed.  In considering the government's request, the Attorney General considered, inter alia, a variety of rigorous factors, including whether the information sought is "essential" to the investigation and "narrowly drawn."  28 C.FR. § 50.10(c)(5)(ii)(A), (vii).  As the Court is aware, these standards go above and beyond what is required under 18 U.S.C. § 2703(d).

records related to the account "Barbara.starr@turner.com" (the "Account") within ten days of the Turner Order's issuance. In issuing the Turner Order, Magistrate Judge Davis found that the government "offered specific and articulable facts showing that there [were] reasonable grounds to believe that the records sought [were] relevant and material to an ongoing criminal investigation." Turner Order.

The Turner Order specified the following customer or subscriber information to be produced, for the period June 1, 2017, to July 31, 2017:

1. Names (including subscriber names, user names, and screen names);
2. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail address);
3. Local and long distance telephone connection records;
4. Records of session times and durations, and the temporarily assigned network address (such as Internet Protocol ("IP") addresses) associated with those sessions;
5. Length of service (including start date) and types of service utilized;
6. Telephone or instrument numbers (including the registration Internet Protocol ("IP") address); and
7. Means and source of payment for such service (including any credit card or bank account number) and billing records.

The Turner Order also identified additional records to be produced, for the same Account and same time period:

1. Records of user activity for each connection made to or from the Account, including subject headers;[2] log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses;
2. Information about each communication sent or received by the Account, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers).

---

[2] The Turner Order includes "subject header" information as an item for production, but the government is no longer seeking this information. Counsel for Warner Media has been so advised.

2

On July 17, 2020, Warner Media was served the Turner Order. Shortly thereafter, and upon the request of Warner Media for an extension of time to comply with the Turner Order, the government agreed to a 30-day extension, requiring production by August 25, 2020.

Yet rather than complying with the Turner Order, on August 24, 2020 – after nearly four times the original time-frame to produce responsive records had elapsed – Warner Media filed a motion before this Court requesting additional time to respond (the "Motion to Extend" or "Mot. to Extend"). The government objected to Warner Media's motion, and immediately filed a written response with this Court on August 26, 2020 ("Gov't's Response"). The government's objection centered on, inter alia, the fact that Warner Media had: (1) rejected two compromises proposed by the government that would have sufficiently addressed Warner Media's immediate concerns; and (2) failed to provide an adequate accounting to this Court of its efforts to comply with the judicially authorized Turner Order. Gov't's Response at 2. On August 27, 2020, this Court granted Warner Media an extension until September 11, 2020, but specifically noted, "There will be no further extensions" (the "Order re Extension").

On September 11, 2020, without having produced any records in response to the Turner Order, Warner Media filed the Motion to Quash that is before this Court. The government now responds to the Motion.

**II.    *Argument***

Warner Media argues that the Turner Order must be quashed or narrowed because "requiring [it] to provide the government [the] information [it seeks] would violate the mandate under both § 2703(d) and the First Amendment that an Order for a reporter's communications be carefully tailored to compel the disclosure of the only information that is relevant to the

government's investigation." Mot. to Quash 1.  As discussed below, Warner Media's challenges
to the Turner Order lack merit and must be rejected.

### A. Section 2703(d) Does Not Authorize Warner Media to Challenge the Court's Determination that the Turner Order is Based Upon "Specific and Articulable Facts," and, In Any Event, the Court's Determination Is Correct on the Merits

Although Warner Media is not privy to the Turner Order's factual basis (which remains
sealed), Warner Media contends that the records sought relate to thousands of emails, "most [of
which] likely have no connection to the government's investigation." Mot. to. Quash 1.  Warner
contends that "§ 2703(d) requires a more targeted approach." Mot. to Quash at 4.  To the extent
that the Motion to Quash seeks to relitigate Judge Davis's determination that the application
established specific and articulable facts showing that there are reasonable grounds to believe
that the records sought are relevant and material to an ongoing criminal investigation, it must be
rejected on procedural grounds and, in any event, is lacking in merit.

As an initial matter, Warner Media may not challenge the Turner Order on the ground
that it is unsupported by "specific and articulable facts."  The Turner Order was issued under
§ 2703(d), which is part of the Stored Communications Act, 18 U.S.C. §§ 2701-12 (the "SCA").
Under § 2703(d), a provider may move to quash or modify a § 2703(d) order if: (1) "the
information or records requested are unusually voluminous;" or (2) compliance would cause it
"undue burden."  Significantly, Warner Media does not seek to quash or modify the Turner
Order on either of these bases.  Instead, it suggests that the information sought by the United
States is not actually "relevant and material" to its investigation. Mot. to Quash at 4-6.[3]  The
SCA does not allow Warner Media to challenge the Turner Order on this basis.

---

[3] The cases Warner Media cites in support of their motion are clearly distinguishable.
For example, Warner Media cites to In re Applications of the United States of America for an
Order Pursuant to 18 U.S.C. § 2703(d), 206 F. Supp. 3d 454 (D.D.C. 2016), where the magistrate

The SCA expressly prohibits the improvising of remedies. Specifically, Congress provided that "[t]he remedies and sanctions described in this chapter are the only judicial remedies and sanctions for nonconstitutional violations of this chapter." 18 U.S.C. § 2708; see also In re Application of the United States of America for An Order Pursuant to 18 U.S.C. § 2703(d), 830 F. Supp. 2d 114, 129 (E.D. Va. 2011) (Judge Liam O'Grady affirming this Court's ruling that petitioners had no statutory standing, and declining to infer a non-enumerated statutory remedy because Congress explicitly limited the scope of remedies and sanctions in 18 U.S.C. § 2708); United States v. Clemency, 631 F.3d 658, 667 (4th Cir. 2011) (explaining that "Congress has shown that it knows how to create a statutory suppression remedy" and noting that while Congress established a mechanism for suppression of evidence obtained in violation of wiretaps under 18 U.S.C. § 2515, it did not do so for violations of § 2703(d)).[4]

Neither § 2703(d), nor any other provision of the SCA, permits a provider to challenge an order on the ground that it is unsupported by "specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought, are relevant and material to an ongoing criminal investigation." The absence of any such provision makes

---

Judge declined to approve the government's applications for § 2703(d) orders because, inter alia, the government's application included little more than "conclusory statements" and left the court "speculating" "as to whether these accounts were in fact used by the targets of the investigation." Id. at 455, 458. In contrast, Judge Davis reviewed the government's ex parte application for the Turner Order, and found that it met the requirements of § 2703(d). This Court's review will likewise confirm that the application for the Turner Order was neither conclusory nor speculative and that it was appropriately granted.

[4] Section 2708 implies that additional "remedies and sanctions" may be available for constitutional violations. To the extent that Warner Media claims that the Turner Order violates the First Amendment (as opposed to merely claiming that First Amendment concerns warrant a strict application of Section 2703(d)), that claim lacks merit for the reasons discussed at pp. 9, infra.

sense, as providers such as Warner seldom have access to the facts supporting the government's

request for a § 2703(d) order and are thus ill-equipped to assess whether there are reasonable

grounds to believe that the information sought will be relevant and material to an ongoing

criminal investigation.  Accordingly, Warner Media's challenge to Judge Davis's determination

that the Turner Order is inadequately supported by "specific and articulable facts" is not properly

before the Court and must be rejected for that reason alone.[5]

Even assuming *arguendo* Warner Media's challenge to Judge Davis's application of the

"specific and articulable facts" standard is properly before the Court, it must be rejected on the

merits.  Warner Media argues that the Turner Order should be quashed or modified because it is

"overbroad" and "would force Warner Media to produce information . . . that are mostly, and

perhaps entirely, irrelevant, peripheral, and nonessential to the government's investigation."

Mot. to Quash at 11, 13.  Assuming *arguendo* that this claim is properly before the Court, it is

plainly lacking in merit.[6]

---

[5] As previously noted, Warner Media does not appear to challenge the Turner Order on either of the two grounds permitted under the SCA—*i.e.*, unusual volume or undue burden. While Warner Media claims that compliance with the Turner Order is overbroad because it would "force Warner Media to produce information for over 34,000 emails," Mot. to Quash at 13, it does not argue that the production required by the Turner Order would be "unusually voluminous" or provide any basis for so concluding.  Even assuming *arguendo* Warner Media is understood to have raised a claim of "unusual[] volum[e]," the number of potentially responsive documents alone is insufficient to prevail.  Cf. In re Subpoena Duces Tecum, 228 F.3d 341, 345, 350 (4th Cir. 2000) (upholding subpoena for thousands of patient records where each record was potentially relevant but many might turn out on review not to be directly pertinent).  Likewise, Warner Media does not appear to base its challenge on the proposition that compliance with the Turner Order would cause an undue burden.  Indeed, the Declaration submitted with the Motion to Quash suggests that Warner Media had little difficulty identifying and gathering potentially responsive records.  *See* Decl. of Stephanie S. Abrutyn, Warner Media's Senior Vice President & Chief Counsel, Litigation and Public Policy.

[6] Assuming *arguendo* that Warner Media's challenges to Judge Davis's determination are properly before this Court, the appropriate standard of review is the "clearly erroneous or contrary to law" standard.  As the Court is aware, a magistrate judge issuing a § 2703(d) order is

The Court's review of the government's ex parte application will make clear that the

Turner Order readily satisfies the "specific and articulable facts" standard laid out in § 2703(d)

and that Judge Davis was on firm ground in so concluding. The Court's review will likewise

confirm that the government's request for records is not overbroad. The production sought by

the government is limited to only non-content information such as the account subscriber's

name, address, and connection records.[1] These types of routine business records are frequently

obtained through subpoenas, bypassing judicial scrutiny altogether. See Clemeny, 631 F.3d at

666 (recognizing that under 18 U.S.C. 2703(c)(2), "[t]he government can bypass these

procedures [court issued warrant or order] and simply subpoena the records if it seeks only basic

subscriber information"). Moreover, this Court's review of the application will confirm that the

requested production is carefully limited in scope and time in light of the nature and

circumstances of the investigation and the other information available to the government.

Although Warner Media has never seen the government's ex parte application or the

information offered in support thereof, Warner Media speculates that the Turner Order

determining a "pretrial matter" within the meaning of 28 U.S.C. § 636(b). Gomez v. United
States, 490 U.S. 858, 868 & n.16 (1989) (listing search warrant applications as among the
"pretrial matter[s]" under § 636 that may be heard and determined by magistrate judges subject
to reconsideration by a district judge on a showing that the "magistrate's order is clearly
erroneous or contrary to law."). Accordingly, a district court judge reconsidering a magistrate
judge's determinations of pretrial matters under § 636(b)(1)(A) must apply the "clearly
erroneous or contrary to law" standard. See In re Application of the United States of America
for An Order Pursuant to 18 U.S.C. § 2703(d), 830 F. Supp. 2d at 125, 129 (Judge O'Grady
applying "clearly erroneous or contrary to law" standard in affirming this Court's determination,
inter alia, that petitioners had "no statutory standing to bring the Motion to Vacate the Twitter [§
2703(d)] Order on non-constitutional grounds"). The same standard should apply here. In any
event, as further discussed in the text above, even de novo review of the government's ex parte
application by this Court will make clear that Judge Davis was correct to issue the Turner Order.

[1] As noted above, the government is no longer seeking the production of subject header
information.

7

authorizes an "impermissible fishing expedition" and asserts that a significant portion of the responsive records are not relevant to the government's investigation. Mot. to Quash at 11-13. This Court has previously rejected such speculative challenges to § 2703(d) orders. See In re: s 2703(d) Order; 10GJ3793 787 F. Supp. 2d, 430, 437 (E.D. Va. 2011) (where this Court dismissed petitioner's speculative claim that the government's application could not have justified the scope of the § 2703(d) order); see also In re Application of the United States of America for An Order Pursuant to 18 U.S.C. § 2703(d), 830 F. Supp. 2d at 130 (Judge O'Grady holding, in affirming this Court's decision, that the government's confidential factual affidavit, which petitioner had never seen, meets the legal threshold of 18 U.S.C. § 2703(d)). The Court should likewise reject the similar claim brought by Warner Media here.

Contrary to Warner Media's apparent view, the government need not establish in its application that every record it seeks is directly relevant to government's ongoing investigation before a § 2703(d) may issue. Indeed, this Court has recognized that a "§ 2703(d) is routinely used to compel disclosure of records, only some of which are later determined to be essential to the government's case." In re: s 2703(d) Order; 10GJ3793 787 F. Supp. 2d at 437 ("[T]he scope of the Twitter Order is appropriate even if it compels disclosure of some unhelpful information."). Section 2703(d) requires the government to show only "reasonable grounds to believe that the . . . records or other information sought . . . are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Further, as Judge O'Grady wrote, "The government need not show actual relevance, such as would be required at trial." In re Application of the United States of America for An Order Pursuant to 18 U.S.C. § 2703(d), 830 F. Supp. 2d at 130. Moreover,

> all evidence exists in a factual context, and to understand evidence one must understand its context. Some amount of what [might otherwise be] consider[ed]

8

"overbreadth" is always necessary to establish context for facts that are indisputably relevant and material. The probability that some gathered information will not be material is not a substantial objection at this stage.

Id. Finally, "the notion that the government must determine the scope of a § 2703 order with great precision before the order can be issued is quite incorrect." Id. Rather, "[t]he purpose of a criminal investigation is to find out whether crimes have occurred; to find out whether crimes have occurred, the government must conduct a factual investigation." Id. To restrict the government's inquiry as Warner Media proposes "would impose a significant and unjustified burden on law enforcement." Id. Because the Turner Order is supported by "specific and articulable facts" and is carefully tailored in scope and time based on the information presented in the application, this Court should reject Warner Media's statutory challenge.

**B.  The Turner Order Does Not Implicate Substantial First Amendment Interests**

Warner Media claims that the compliance with the Turner Order, which seeks non-content information such as names and addresses, and transactional records, would "implicate[] substantial First Amendment interests." Mot. to Vacate at 9. It further claims that those interests "mandate that that a § 2703(d) order be carefully tailored to compel the production of only those documents that are likely to be relevant to the government's investigation." Id. at 8. Those claims, too, are without merit.

**1.  Warner Media Does Not Have A Cognizable First Amendment Claim**

In Branzburg v. Hayes, 408 U.S. 665 (1972), the Supreme Court rejected claims of privilege by reporters who had been called to testify before a grand jury about criminal conduct involving confidential sources. 408 U.S. at 667-679, 708-709. The Court "declined[]" to "interpret[] the First Amendment to grant newsmen a testimonial privilege that other citizens do"

6

not enjoy." Id. at 690. "[W]e cannot," the Court explained, "seriously entertain the notion that the First Amendment protects a newsman's agreement to conceal the criminal conduct of his source, or evidence thereof, on the theory that it is better to write about crime than to do something about it." Id. at 692. "Insofar as any reporter in these cases undertook not to reveal or testify about the crime he witnessed," the Court continued, "his claim of privilege under the First Amendment presents no substantial question." Id.  The Court accordingly "insist[ed] that reporters, like other citizens, respond to relevant questions put to them in the course of a valid grand jury investigation or criminal trial," even if doing so would require revealing the identity of a confidential source. Id. at 690-91.  The Court expressly rejected any requirement that the government "demonstrate[] some 'compelling need' for a newsman's testimony" as a prerequisite to obtaining it. Id. at 708; see id. at 680, 705-706.

The Supreme Court recognized that "[f]air and effective law enforcement aimed at providing security for the person and property of the individual is a fundamental function of government," Branzburg, 408 U.S. at 690, and found that none of the constitutional and policy concerns advanced in support of a reporter's privilege justified allowing reporters to refuse to testify in criminal proceedings, id. at 679-708.  The Court further explained that "the Constitution does not, as it never has, exempt the newsman from performing the citizen's normal duty of appearing and furnishing information relevant to the grand jury's task." Id. at 691.  In particular, the Court rejected the argument that if reporters are "forced to respond to subpoenas and identify their sources or disclose other confidences, their informants will refuse or be reluctant to furnish newsworthy information in the future." Id. at 682.  The Court reasoned that the "preference for anonymity" of informants who "desire to escape criminal prosecution" is "hardly deserving of constitutional protection." Id.  And the Court explained that "[t]he crimes

10

of news sources are no less reprehensible and threatening to the public interest when witnessed by a reporter than when they are not." Id. at 692. The Court did not limit its holding to news sources who themselves have committed crimes, but extended it also to cover confidential sources with information about illegal conduct by others. Branzburg, 408 U.S. at 693-695.[8]

The Fourth Circuit has recognized that Branzburg "'in no uncertain terms rejected the existence of a 'First Amendment testimonial privilege, absolute or qualified, that protects a reporter from being compelled to testify by the prosecution or the defense in criminal proceedings about criminal conduct that the reporter personally witnessed or participated in, absent a showing of bad faith, harassment, or other such non-legitimate motive, even though the reporter promised confidentiality to his source.'" United States v. Sterling, 724 F.3d 482, 492 (4th Cir. 2013) (quoting In re Grand Jury Subpoena, Judith Miller, 438 F.3d 1141, 1146 (D.C. Cir. 2006). In Sterling, the Fourth Circuit reversed a district court order quashing a subpoena for a reporter's testimony on the ground that although the testimony was relevant, it was unnecessary in light of other evidence in the government's possession. The Fourth Circuit explained that both the majority and Justice Powell's concurring opinion in Branzburg had rejected a requirement that the government satisfy a compelling-interest test substantially

---

[8] The Supreme Court has consistently adhered to the holding and reasoning of Branzburg. See, e.g., Cohen v. Cowles Media Co., 501 U.S. 663, 669 (1991) (explaining that "the First Amendment [does not] relieve a newspaper reporter of the obligation shared by all citizens to respond to a grand jury subpoena and answer questions relevant to a criminal investigation, even though the reporter might be required to reveal a confidential source"); University of Pa. v. EEOC, 493 U.S. 182, 201 (1990) (explaining that Branzburg "rejected the notion that under the First Amendment a reporter could not be required to appear or to testify as to information obtained in confidence without a special showing that the reporter's testimony was necessary").

identical to the one the district court adopted and had also rejected the policy arguments Sterling advanced in support of his claimed privilege. Id. at 495.[9]

The Fourth Circuit has also held that Branzburg is controlling in the context of grand jury subpoenas seeking the production of records that arguably implicate First Amendment interests. In a case cited by Warner Media, In re Grand Jury 87-3 Subpoena Duces Tecum, 955 F.2d 229 (4th Cir. 1992), the Fourth Circuit refused to apply a "substantial relationship" test in reviewing grand jury subpoenas requiring the production of a broad range of corporate records by distributors of sexually explicit films. Id. at 234. Relying on Branzburg and other decisions, the Fourth Circuit held that the prior determinations of the Supreme Court and District Court that the records sought were relevant under the generally applicable relevance standard for grand jury subpoenas eliminated any First Amendment concern. Id. (citing United States v. R. Enterprises, 498 U.S. 292, 302 (1991) (upholding the same subpoenas because there was a "reasonable possibility that the business records [of the companies] would produce information relevant to the grand jury's investigation," and remanding to the Fourth Circuit to address the First Amendment challenge)). Although the Fourth Circuit refused to apply a heightened standard for

---

[9] Warner Media argues in its motion that Sterling should not "dictate the result of this motion." Mot. to Quash at 7 & n4. This argument is without merit. First, although, as Warner Media argues, the Fourth Circuit did not directly address the standard for a § 2703(d), the discussion focused on a more invasive law enforcement action: compelling a reporter to give testimony about confidential sources. Sterling, 724 F.3d at 490, 492 (holding "There is no First Amendment testimonial privilege, absolute or qualified, that protects a reporter from being compelled to testify...."). Surely Sterling is therefore controlling in the matter before this Court, where the government merely seeks non-content records that are also obtainable through subpoena. Moreover, Warner Media appears to suggest that unlike in Sterling, where compliance was tied to a legitimate law enforcement need, the Turner Order is not. Mot. to Quash at 7 & n4. For the reasons articulated in pp. 4 and elsewhere, this argument is without merit as Warner Media has no statutory basis for raising a relevancy or materiality claim, and has never reviewed the government's ex parte application, which the Court's review will confirm readily satisfies the applicable requirements.

grand jury subpoenas implicating the First Amendment, it cautioned district courts to apply with "special sensitivity" to such subpoenas the generally-applicable rule precluding "arbitrary fishing expeditions" and "harass[ment]." In re Grand Jury 87-3 Subpoena Duces Tecum, 955 F.2d at 234; see also Branzburg, 408 U.S. at 707-08 (leaving open the possibility that a motion to quash may be warranted where the government's investigation is conducted in bad faith, and where the government harasses members of the news media).

In light of the foregoing authorities, it is clear that Warner Media's First Amendment concerns provide no basis for quashing or narrowing the Turner Order. Those authorities establish that the news media has no special privilege under the First Amendment in responding to valid legal process issued in aid of a criminal investigation. In the context of grand jury subpoenas, the law requires nothing more than the good-faith application of the generally-applicable standard, under which a subpoena must be upheld "unless there is no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation." R Enterprises, 498 U.S. at 301. It necessarily follows that the same rule must apply to § 2703(d) orders, which, unlike subpoenas, are issued only after a judicial officer has found, based on "specific and articulable facts," "reasonable grounds to believe that . . . the records or other information sought . . . are relevant and material to an ongoing criminal investigation." In the context of § 2703(d), the government's good-faith satisfaction of that statutory requirement is sufficient to address any arguable First Amendment concerns, particularly, where, as here, the information to be produced consists of non-content records such as names and records of sessions times and duration, which are frequently obtained by subpoena, bypassing judicial scrutiny altogether. See Clenney, 631 F.3d at 666.

13

Even applying the applicable § 2703(d) standard with "special sensitivity," as Warner Media urges, this Court will conclude that Judge Davis correctly found that the Turner Order is supported by "specific and articulable facts" and that it is carefully tailored both in terms of time and scope. The First Amendment requires nothing more. Although Warner Media expresses general concerns about the possible chilling effects that could result from requests for information about confidential sources and newsroom discussions, the Supreme Court dismissed precisely the same concerns in refusing to give reporters special First Amendment status in Branzburg. See 408 U.S. at 691 (requiring reporter to comply with grand jury subpoena "involves no restraint on what newspapers may publish or on the type or quality of information reporters may seek to acquire, nor does it threaten the vast bulk of confidential relationships between reporters and their sources."). And, here, where the government's request is limited to a discrete set of non-content records relating to emails, any arguable chilling effect is necessarily even less pronounced than the effect alleged and dismissed by the Supreme Court in Branzburg, where the challenged subpoenas required reporters to appear before a grand jury in person to testify about, among other things, their interactions with sources.[10] See In re: s 2703(d) Order; 10GJ3793, 787 F. Supp. 2d at 438 (this Court finding "no cognizable First Amendment

---

[10] The cases cited by Warner Media about possible intrusion into the "newsgathering, deliberating, editing, and publishing processes" are readily distinguishable. See Mot. to Quash at 9. In Miami Herald Pub. Co. v. Tornillo, 418 U.S. 241 (1974), for example, the Supreme Court struck down a Florida law granting "a political candidate a right to equal space to answer criticism and attacks on his record by a newspaper, and making it a misdemeanor for the newspaper to fail to comply," finding it in violation of the First Amendment, Id. at 258. A law compelling newspapers to publish particular content is a far cry from a carefully-tailored court order requiring a discrete production of non-content records about a single email account in aid of a criminal investigation. Branzburg makes clear that the public interest in law enforcement justifies its good-faith use of even more intrusive investigative tools, such as grand jury subpoenas for reporter testimony, which "involve[] no restraint on what newspapers may publish or on the type or quality of information reporters may seek to acquire." 408 U.S. at 691.

14

violation" where petitioners fail to demonstrate how a § 2703(d) order, which did not seek to "control or direct the content" of a First Amendment right, had a "chilling effect."); see also In re Application of the United States of America for An Order Pursuant to 18 U.S.C. § 2703(d), 830 F. Supp. 2d at 145-146 (Judge O'Grady refusing to engage in further First Amendment review after petitioner failed to "introduce[] evidence that harassment or intimidation had occurred and did not establish how First Amendment rights were "impinged" as a result of a § 2703(d) order served on a service provider).

Finally, Warner Media does not allege and cannot show that the government acted in bad faith in seeking judicial approval of the Turner Order. As discussed above, the government's application for the Turner Order was vetted pursuant to the Department's Media Policy protocols, where every facet of both the criminal investigation and the government's need for the records are challenged and rigorously reviewed. After receiving Attorney General Authorization to proceed, the government submitted its Application to Magistrate Judge Davis, who assessed the legitimacy of the government's facts before issuing the Turner Order. Upon review, Magistrate Judge Davis concluded that the government "offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought, are relevant and material to an ongoing criminal investigation." Turner Order. Even after serving Warner Media with the Turner Order, the government agreed to an initial extension of 30 days, and it carefully considered every subsequent request for additional time and narrowing of the Turner Order's scope. Accordingly, the government has acted in good faith throughout, and Warner Media has presented no argument or evidence to the contrary.

For the reasons stated above, the Court should find that the Turner Order does not infringe on any First Amendment interests, and Warner Media must comply with it promptly.

## CONCLUSION

For the foregoing reasons, the government requests that the Court deny Warner Media's

Motion to Quash or Modify Order Issued Pursuant to 18 U.S.C. § 2703(d).

Respectfully submitted,

John C. Demers
Assistant Attorney General
National Security Division
United States Department of Justice

G. Zachary Terwilliger
United States Attorney

David Lim
Trial Attorney
Special Assistant United States Attorney
Virginia Bar No. 99999
Attorney for the United States
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 598-3449
David.Lim2@usdoj.gov

Gordon D. Kromberg
Assistant United States Attorney
Virginia Bar No. 33676
Attorney for the United States
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700
(703) 837.8242 (fax)
gordon.kromberg@usdoj.gov

16

<u>Certificate of Service</u>

I hereby certify that on September 24th, 2020, I transmitted the foregoing

GOVERNMENT'S RESPONSE IN OPPOSITION TO WARNER MEDIA, LLC'S

MOTION TO QUASH OR MODIFY ORDER ISSUED PURSUANT TO 18 U.S.C. § 2703(d)

by email to below listed counsel of record:

        Brittany Amadi at Brittany.amadi@wilmerhale.com
        Aaron Zebley at aaron.zebley@wilmerhale.com
        Whitney Russell at whitney.russell@wilmerhale.com

        Gordon D. Kromberg
        Assistant United States Attorney
        Virginia Bar No. 33676
        Assistant United States Attorney
        Attorney for the United States
        2100 Jamieson Avenue
        Alexandria, VA  22314
        (703) 299-3700
        (703) 837.8242 (fax)
        gordon.kromberg@usdoj.gov