1

1    UNITED STATES DISTRICT COURT
2       EASTERN DISTRICT OF VIRGINIA
          ALEXANDRIA DIVISION

3  IN RE:  APPLICATION OF THE   )  Case 1:20-dm-12
   UNITED STATES OF AMERICA     )
4  FOR ORDER PURSUANT TO        )  Alexandria, Virginia
   18 U.S.C. § 2703(d)          )  December 16, 2020
5  ─────────────────────────────)  4:04 p.m.
                                )  Pages 1 - 26
6

7       TRANSCRIPT OF UNDER SEAL MATTER

8        VIA ZOOMGOV VIDEOCONFERENCE

9   BEFORE THE HONORABLE ANTHONY J. TRENGA

10      UNITED STATES DISTRICT COURT JUDGE

11

12                 COPY

13

14

15

16

17

18

19

20

21

22

23

24

25   COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
                  UNDER SEAL

   Rhonda F. Montgomery   OCR-USDC/EDVA   (703) 299-4599

2

```
 1  APPEARANCES:

 2  FOR THE GOVERNMENT:

 3        GORDON D. KROMBERG, ESQUIRE
          W. NEIL HAMMERSTROM, JR., ESQUIRE
 4        OFFICE OF THE UNITED STATES ATTORNEY
          2100 Jamieson Avenue
 5        Alexandria, Virginia  22314
          (703) 299-3700
 6
          JULIE A. EDELSTEIN, ESQUIRE
 7        DAVID H. LIM, ESQUIRE
          U.S. DEPARTMENT OF JUSTICE
 8        NATIONAL SECURITY DIVISION
          950 Pennsylvania Avenue, N.W.
 9        Washington, D.C.  20530
          (202) 514-2007
10
    FOR WARNER MEDIA, LLC:
11
          PAUL R.Q. WOLFSON, ESQUIRE
12        AARON ZEBLEY, ESQUIRE
          WHITNEY D. RUSSELL, ESQUIRE
13        DEREK A. WOODMAN, ESQUIRE
          KEVIN GALLAGHER, ESQUIRE
14        WILMERHALE, LLP
          1875 Pennsylvania Avenue, N.W.
15        Washington, D.C.  20006
          (202) 663-6000
16

17

18

19

20

21

22

23

24

25
```

UNDER SEAL

Rhonda F. Montgomery   OCR-USDC/EDVA   (703) 299-4599

1           THE COURT:  All right.  This matter is under

2   seal.

3           Please call the case.

4           THE CLERK:  No. 1:20-dm-12, *Sealed v. Sealed*.

5           Counsel, will you please note your

6   appearances for the record.

7           MR. WOLFSON:  Good afternoon, Your Honor.

8   This is Paul Wolfson from Warner Media.  With us today

9   on the line are Aaron Zebley, Whitney Russell, Derek

10  Woodman, and Kevin Gallagher, also from my law firm.

11  Also, David Vigilante, the general counsel for CNN, and

12  Zazi Pope and Andrew Han, also from Warner Media.

13          THE COURT:  All right.  Welcome to everyone.

14          MR. KROMBERG:  Good afternoon, Your Honor.

15  Gordon Kromberg for the United States.  With me are

16  Neil Hammerstrom from the United States Attorney's

17  office; David Lim and Julie Edelstein from the

18  Department of Justice, the National Security Division;

19  and FBI Special Agent Steve Jett.

20          THE COURT:  All right.  We're here on Warner

21  Media's objections to an appeal from the magistrate

22  judge's denial of a motion to quash or modify order

23  issued pursuant to 18 U.S.C. § 2703(d).  I've reviewed

24  the supplemental briefing, as well as the proceedings

25  before the magistrate judge.  I'm pleased to hear

UNDER SEAL

Rhonda F. Montgomery   OCR-USDC/EDVA   (703) 299-4599

1 further from counsel.

2       It's the inherent nature of these proceedings

3 that is really inherently unsatisfying since the movant

4 here, Warner Media, has not had the opportunity to

5 review what the Court has reviewed, which is the

6 *ex parte* classified submissions and the rationale for

7 the order.  The Court has recognized that.  The Court

8 has reviewed Warner Media's overall position and has

9 taken that position into consideration as it has

10 reviewed those *ex parte* classified submissions.

11       Mr. Wolfson, are you going to be speaking on

12 behalf of Warner Media?

13       MR. WOLFSON:  Yes, Your Honor.

14       THE COURT:  All right.  I'll give you that

15 opportunity.

16       MR. WOLFSON:  Thank you, Your Honor.

17       I'd like to start by addressing sort of two

18 salient features about this case.  The first is this is

19 not a run-of-the-mill 2703(d) order.  This case

20 involves an order that is directed at a journalist's

21 e-mail account and forces the journalist -- would force

22 the journalist to disclose every contact she had by

23 e-mail over a two-month period, whether internal or

24 external.

25       According to the government, there's nothing

1   problematic under either the First Amendment or

2   Section 2703 in forcing a journalist to turn over a

3   road map of all of her news-gathering activities and

4   all of the newsroom's sort of editorial -- even if they

5   have no connection to the government's investigation.

6           No case suggests that the government can

7   simply scoop up everything that a journalist does in

8   this manner.  To the contrary, the Supreme Court, the

9   Fourth Circuit, and other courts have all made clear

10  that the government has to tread very carefully when

11  First Amendment interests are at stake.

12          Let me address the second important aspect

13  here, which is Warner Media is not asking the Court for

14  an evidentiary privilege.  An evidentiary privilege

15  applies where courts -- where a witness can refuse to

16  testify and refuse to hand over even relevant

17  information concerning a crime.  That's the argument

18  that the Supreme Court rejected in *Branzburg* and that

19  the Fourth Circuit rejected in *Sterling*.

20          We're not arguing that the government is not

21  entitled to relevant information in the investigation.

22  What we are arguing is that in light of the First

23  Amendment interests at stake, when the government uses

24  compulsory process to obtain information directly from

25  a news organization and from a journalist, it has to

1  carefully distinguish between irrelevant information

2  and relevant information.  And it has not done so here.

3           Even in other circumstances, the government

4  could paint with a broader brush under 2703.  Given the

5  First Amendment interests at stake, it may not do so,

6  and it has to take a more tailored approach.  In a case

7  like this, the government has to take a narrower more

8  targeted approach before it seizes information about a

9  journalist's contacts.

10           Even assuming that some portion -- some small

11  portion of these 34,000 e-mails are relevant, still,

12  Your Honor, it cannot be that every name of every

13  contact for every news story that a journalist had over

14  two months is relevant to the government's

15  investigation.  During the two months covered by the

16  order, Ms. Starr published more than 50 articles and

17  appeared on camera 150 times covering topics literally

18  spanning the globe from Afghanistan to North Korea to

19  internal politicking at the Pentagon.

20           For all of these articles, she constantly

21  worked her beat developing her sources and contacts and

22  communicating internally at CNN.  Even the government

23  has never suggested that all of her reporting and all

24  of her stories bear on the government's investigation.

25           There's also the problem of the 26,000

UNDER SEAL

Rhonda F. Montgomery   OCR-USDC/EDVA   (703) 299-4599

1    e-mails that are internal to CNN and Warner Media.   It

2    cannot be that every contact that the reporter had with

3    her editors and colleagues over a two-month period is

4    relevant to the government's investigation.

5              In fact, even assuming that this is a leak

6    investigation, as the government has suggested, it's

7    hard to see how any of the internal e-mails would be

8    relevant to the investigation.   None of them would

9    disclose -- would be likely to disclose the identity of

10   her sources.   But even assuming some of them might be,

11   it cannot be the case, Your Honor, that all of these

12   contacts that are internal to CNN would be relevant to

13   the government's investigation.

14             But they would do damage to the First

15   Amendment interests at stake.   Because what they would

16   do is give the government essentially a bird's-eye view

17   of how the newsroom operates, what its journalistic

18   priorities are.   And what is particularly troubling,

19   given what this reporter's beat is, is it would allow

20   the government essentially to monitor -- to peer over

21   the shoulder of a news organization that is

22   investigating the government itself.

23             I'm not aware of any authority that says that

24   the government can breach the wall into the newsroom

25   and essentially say, "Tell us every contact that you,

1  the reporter, had with all of your colleagues and all

2  of your editors over a two-month period."

3      As the Fourth Circuit said in *The Washington*

4  *Post* case which is cited in our briefs, the integrity

5  of the newsroom does not really permit mandated

6  interactions with the government.

7      Our point, again, is not that the government

8  may never obtain information from a news organization,

9  but Section 2703 and the First Amendment do not give

10  the government the right to essentially rummage through

11  all a journalist's contacts.

12      Now, the government points out that Judge

13  Davis issued the order based on the affidavit that was

14  submitted to him, but the government at the time and

15  Judge Davis at the time did not know how capacious the

16  order would be.  We presume the government and Judge

17  Davis did not know that the order would reach many

18  thousands of purely internal communications and

19  thousands of external communications having nothing to

20  do with the government's investigation.  Now that the

21  government does know that, it is obligated to take a

22  more tailored approach.

23      Now, the government suggests that there are

24  no First Amendment interests at stake because the

25  2703(d) order here only asks for noncontent records,

UNDER SEAL

1   but no court has endorsed the proposition that just
2   because a record is noncontent means that it has no
3   First Amendment protection.   And I think that follows,
4   you know, from a ready understanding about how
5   journalists operate.   If the government knows who all
6   of a journalist's contacts are and all of a
7   journalist's sources are, then the government can learn
8   what that reporter is investigating.

9           And the internal information also lets the
10  government know what the newsroom's priorities are.
11  That's a critical First Amendment interest.   Again, the
12  question is not whether the government might be able to
13  obtain relevant information about one of the reporter's
14  sources who had information about a crime.   That's what
15  was at issue in *Branzburg* and *Sterling*.   In *Branzburg*
16  and *Sterling*, what was at issue was that the government
17  was attempting to get the testimony of journalists who
18  had themselves seen criminal activity or who had
19  information, who knew that people had essentially
20  confessed to criminal activity or had directly relevant
21  activity.

22          They were very, very targeted approaches.   I
23  mean, in *Sterling*, the government essentially was
24  asking the reporter to testify about one thing, that he
25  got his information from one particular source.   The

UNDER SEAL

1    government was certainly not attempting to say to a

2    journalist, "Please give us the identities of everybody

3    who you spoke to over a two-month period even if that

4    has nothing to do whatsoever with our leak

5    investigation."  That is essentially what the

6    government is doing now.

7           I think there are many questions that the

8    government should ask itself before, you know, engaging

9    on such a broad-brush approach and why -- and how the

10   government should tailor its request.  For example, why

11   are the purely internal communications necessary at

12   this juncture?  Why can't the government go

13   step-by-step and seek the external ones first and then

14   the internal ones as another option?  Why can't the

15   government limit its searches to certain e-mail

16   domains?

17          For example, why can't the government exclude

18   some?  For example, some of the communications may be

19   from people with .gov and .mil e-mail addresses.  Those

20   are e-mail addresses to which the government itself has

21   access without needing to go to a journalist as it's

22   not supposed to do under the Department of Justice

23   media regulations which do recognize the important

24   First Amendment interests at stake.

25          You know, given how many stories Ms. Starr

1  investigated, why can't the government at least exclude

2  a number of them because it knows that they're

3  irrelevant to the investigation?

4  　　　　　　Also, Warner Media has attorneys, outside

5  attorneys who are cleared, you know.  Why can't the

6  government work with cleared counsel and help them

7  refine the investigation?

8  　　　　　　I think all of those -- all of those are

9  options that the government could have considered and

10 should have considered without going -- without

11 essentially taking this very, very broad approach and

12 asking for every single thing -- every single e-mail

13 that a journalist has had with her contacts over a

14 two-month period, the vast majority of which are surely

15 not relevant to its investigation.

16 　　　　　　I think I've made my main point here, Your

17 Honor.  Again, I want to emphasize we are not asking

18 here for an evidentiary privilege.  We are not saying

19 that a journalist is entitled not to turn over

20 information that the government can show is relevant to

21 a criminal investigation.

22 　　　　　　What we are saying is that, given the scope

23 of this order, the vast majority of the information is

24 almost certainly irrelevant.  And when the

25 government -- when the 2703(d) order has such a broad

1   reach, the government must proceed more carefully and

2   in a more tailored fashion to filter out the relevant

3   from the irrelevant information and, the government has

4   not even tried to do that here.

5           Thank you.

6           THE COURT:  All right.  Thank you.

7           Mr. Kromberg, are you going to be arguing or

8   Mr. Lim?

9           Mr. Kromberg, you need to unmute.

10          MR. KROMBERG:  Thank you, Your Honor.

11          The fundamental misconception here, as Your

12  Honor noted, is that Warner Media just doesn't know

13  what it doesn't know.  And when Warner Media comes and

14  argues that we should have tread more carefully, we

15  should have followed the DOJ regulations, Your Honor

16  knows from the *ex parte* portions of the filings here

17  that we tread very carefully here and we did our best.

18  We followed the DOJ regulations, and here we are today.

19          We're at sort of an ironic position in

20  that -- we're not hearing Warner Media say, oh, just --

21  we'll be glad to tell you who the source is that you're

22  looking for.  They're not saying that because they know

23  that under *Sterling*, there's no way that they could not

24  tell us that if we asked.  They don't have a legal

25  privilege to not tell us that.

1          So in our attempt to tread more carefully and
2   not ask directly who the source is, we tried to do it a
3   different way, and we tried -- as Your Honor can see
4   from the pleadings, the *ex parte* pleadings, we tried in
5   many ways to determine the information at stake here.
6   And after thinking about it and thinking about it and
7   thinking about it, we are where we are, and that's --
8          When Warner Media says it cannot be that
9   every contact is relevant, Warner Media just doesn't
10  know what they don't know.  When Warner Media says they
11  haven't narrowed -- they haven't volunteered a solution
12  to a more narrow search, when they say we haven't
13  figured out a way to do a more narrow search, it's
14  because they don't know what they don't know.  We have
15  tread carefully.
16         The First Amendment is not as Warner Media
17  concedes.  It does not protect this information.  We
18  need the information for the reasons that the Court has
19  seen.  2703(d) does not provide a defense for what
20  impinges on some First Amendment right here, which
21  Warner Media concedes that it's not a First Amendment
22  right to withhold it.  It's not a matter of burden
23  under the terms of 2703.
24         The issue of -- Warner Media suggests a
25  step-by-step -- well, we haven't followed a

UNDER SEAL

1    step-by-step process.  We haven't proposed that.  Here

2    it is in December 2020.  We're looking for information

3    for a period in 2017.  The process that we followed up

4    to now, as the Court can see from the *ex parte* filings,

5    has been deliberative, has been deliberate, methodical,

6    and we have gone down many avenues, and here we are

7    almost three-and-a-half years later.

8            In a step-by-step process, one of the risk is

9    that information and evidence will disappear over time.

10   Memories fail too, but also, information fails over

11   time.  I haven't heard Warner Media saying that they

12   are taking action to preserve all the information that

13   exists.  I certainly hope that they have.

14           But the point is if we did a step-by-step

15   process, I think for the reasons that were specified in

16   the *ex parte* filings, it wouldn't work.  And the FBI

17   would not be able to proceed with its investigation

18   because it would need all of the pieces in order to

19   figure out which are the key ones.  But even if that

20   were possible, to work with only some of the pieces

21   first, we are also risking the evidence disappears as

22   time goes by.

23           So, Judge, I ask that for the reasons set

24   forth -- I think the answers to the questions that

25   Warner Media raises are -- those answers are contained

UNDER SEAL

1    in Special Agent Jett's declarations, and I ask that

2    the reasons for those -- that's the factual basis for

3    our request.  The legal basis is there's no First

4    Amendment privilege here.  There's no provision under

5    2703 for quashing or limiting the order on the grounds

6    that Warner Media has raised.  Therefore, we ask that

7    you uphold the determination and ruling of Judge

8    Buchanan below.

9            Thank you.

10           THE COURT:  Mr. Wolfson.

11           MR. WOLFSON:  Yeah, Your Honor.  Thank you.

12   I just want to make a few brief points.

13           First of all, Warner Media will preserve the

14   information that is called for by the 2703(d) order and

15   has done so.

16           Secondly, you know, my friend on the other

17   side says, you know, that this was a very deliberate

18   process, but the problem is the -- as I said, we're

19   willing to assume that the government didn't know when

20   Judge Davis issued the order that the 2703(d) order

21   would reach as broadly as it did.  But the government

22   now has that information, and it now knows that the

23   order reaches vastly beyond what must be material and

24   relevant to -- relevant and material to its

25   investigation.

1          That's the problem here.  The problem is, you

2   know, even if the government went into it not intending

3   to do so, now it is nonetheless -- the First Amendment

4   does not entitle it just to scoop up all a reporter's

5   contacts.

6          If the government said to a reporter,

7   "Please, you must give me all of your contacts,

8   everybody you contacted over a two-month period, over

9   all of your -- all of your stories no matter how

10  irrelevant to what we're investigating," I don't think

11  any -- it's inconceivable that that would be upheld

12  under the First Amendment.  But that's essentially what

13  the government is saying it's entitled to here.

14         It the same thing with going sort of internal

15  to a newsroom.  If the government said to a reporter,

16  "You must tell us the names -- the names and times of

17  every single person you contacted within your newsroom,

18  including all of your editors," so then the government

19  would have a road map of basically when -- you know,

20  when they spoke with whom.  Again, that's very, very --

21  that's really kind of the crown jewels of what a

22  newsroom has under the First Amendment, and that's

23  very -- that's sort of at the core, I think, of what

24  the First Amendment protects.  Because, essentially, it

25  would let the government know what the newsroom is

 1   going to investigate about the government.
 2   Essentially, that's the government saying there's no
 3   First Amendment problem.
 4            I'm not aware of any case that would suggest
 5   that.  Certainly, there are cases like *Branzburg* and
 6   *Sterling* that say when the government is looking and is
 7   investigating a crime, is looking for specific
 8   information from a journalist because the journalist
 9   has either saw that crime or has information relevant
10   to it, that the journalist does not have a First
11   Amendment privilege to say to the government, "You
12   can't ask me that question."
13            It's important to be very precise about what
14   *Branzburg* and *Sterling* held.  *Branzburg* and *Sterling*
15   held that there is no First Amendment privilege to
16   refuse to answer relevant questions relevant to a
17   crime.  That's not the concern we have here.  The
18   concern we have here is that the compulsory process
19   directed at a journalist here reaches far, far beyond
20   what's relevant, and that is where the First Amendment
21   requires a more discriminating approach.
22            Thank you.
23            THE COURT:  All right.  Thank you.
24            The Court is going to take a short recess,
25   and then I'll come back.  If you all will just stay

1  with me --

2           MR. KROMBERG:  Your Honor --

3           THE COURT:  Yes.

4           MR. KROMBERG:  -- can I impose?  I would like

5  to add something.  It's not actually in response to

6  what Mr. Wolfson said.

7           THE COURT:  Go ahead.

8           MR. KROMBERG:  Thank you, Your Honor.

9           I apologize to Mr. Wolfson.

10          One of the problems in this case is we know

11  that the wheels of justice grind slowly and exceedingly

12  fine.  One of the problems with this particular

13  investigation is that it's not just the matter of

14  achieving justice in a criminal case, but the danger

15  that was -- the issue that is causing the investigation

16  is -- we're interested in terminating that danger as

17  well.  And the longer the investigation continues, the

18  longer the danger remains undealt with, not dealt with.

19  So I do ask that the Court consider that time is

20  significant in this case not only because of the

21  possible loss of evidence, but also because of the harm

22  that triggered the investigation is ongoing.

23          Thank you.

24          THE COURT:  Mr. Wolfson, I'll give you an

25  opportunity to respond if you'd like.

UNDER SEAL

1          MR. WOLFSON:  Oh, thank you, Your Honor.

2          Just briefly, you know, we understand that

3   concern, but the government -- if the government takes

4   a narrower approach, it can get records faster.  I

5   mean, our concern here is with the scope of the order.

6          THE COURT:  All right.  The Court is going to

7   take a short recess.

8      (Recess from 4:26 p.m. until 4:38 p.m.)

9          THE COURT:  We're still under seal.

10         The Court has reviewed this matter, which is

11  before the Court on Warner Media's objections to an

12  appeal from the magistrate judge's denial of motion to

13  quash or modify order issued pursuant to 18 U.S.C. §

14  2703(d).  In that order, Magistrate Judge Buchanan

15  ordered Warner Media to produce to the government

16  information concerning all e-mails that one of its

17  national security reporters working for CNN sent or

18  received during the two-month period June 1, 2017,

19  through July 31, 2017.

20         On July 17, 2020, Warner Media was served

21  with an order dated July 15, 2020, issued under 18

22  U.S.C. § 2703(d).  That order required Warner Media to

23  produce records and other information relating to the

24  e-mail account barbara.starr@turner.com for the period

25  of June 1, 2017, to July 31, 2017.  The July 15 order

1 directs production of extensive information about that

2 account, as well as information about communications

3 sent and received from that account during that period.

4 Overall, the order would require the production of

5 approximately 34,000 e-mails pertaining to that

6 account.

7        On September 11, Warner Media filed a motion

8 requesting the Court to quash or narrow the July 15

9 order.  The government opposed that motion and

10 submitted an *ex parte* classified declaration.

11        At a hearing on October 7, 2020, Judge

12 Buchanan concluded that the government had not

13 sufficiently narrowed the request for records from the

14 barbara.starr account to obtain relevant records and

15 ordered the government to submit a proposal to narrow

16 its request.

17        On October 9, 2020, the government filed a

18 motion with Judge Buchanan requesting reconsideration

19 and filed a supplemental classified *ex parte* submission

20 in support of that motion.

21        On October 26, Judge Buchanan granted the

22 motion for reconsideration and ordered Warner Media to

23 comply with the July 15 order by November 2.  In

24 granting the government's motion, Judge Buchanan

25 concluded, based on the government's *ex parte*

UNDER SEAL

1  submissions, that the order could not be further

2  narrowed and that the order was not unduly burdensome

3  administratively.

4          On November 9, Warner Media filed its

5  objections and appeal from that order.

6          The first issue to be addressed is the

7  standard of review of Judge Buchanan's order.  In that

8  regard, the government contends that the standard of

9  review is a clearly erroneous or contrary-to-law

10  standard while Warner Media contends that *de novo*

11  review is the appropriate standard.

12          Based on the Fourth Circuit's decision in *In*

13  *re Application of the United States*, 707 F.3d 283 --

14  and the case is cited at 289 -- the Court concludes

15  that the appropriate standard of review is *de novo*

16  review since the order under review was issued by a

17  magistrate judge engaged in additional duties under 28

18  U.S.C. § 636(b)(3) of The Federal Magistrates Act.

19          The Court has, therefore, considered *de novo*

20  the July 15 order and Warner Media's motion to modify

21  or quash the order.

22          All of the ordered information requested

23  falls within the category of noncontent records under

24  the Stored Communications Act.  Under that act, a court

25  may grant a government's records request under

1   Section 2703(d) upon the government's showing of

2   specific and articulable facts showing that there are

3   reasonable grounds to believe the records or other

4   information sought are relevant and material to an

5   ongoing criminal investigation.

6           The act also provides that a court may quash

7   or modify a Section 2703(d) order if the information or

8   records requested are unusually voluminous in nature or

9   compliance with such order otherwise would cause an

10  undue burden on such a provider.

11          Warner Media has requested such relief both

12  on the grounds that the order was overbroad and will

13  likely include a large number of e-mails having no

14  connection to the government's investigation,

15  particularly the internal e-mails to be produced since

16  during the relevant period the reporter wrote more than

17  50 news articles, appeared on television and radio in

18  her professional capacity on more than 150 occasions,

19  and the articles cover a wide range of topics.

20          Warner Media also emphasized that the order

21  implicates substantial First Amendment issues,

22  particularly the production of internal e-mails, which

23  goes to the core of news gathering and editorial

24  functions.

25          The Court has reviewed the government's

1 *ex parte* classified submissions, and it's considered

2 the reasons for the scope of its requested order in

3 light of those submissions.  Based on that *de novo*

4 review, the Court concludes that with respect to the

5 externally sent or received e-mails, the government has

6 made the required showing with respect to government

7 and military e-mail addresses but not otherwise.

8          The Court also concludes with respect to the

9 government and military e-mail addresses that the order

10 does not impose an undue burden on Warner Media either

11 from an administrative perspective or a constitutional

12 First Amendment perspective.

13          With respect to the requested internal

14 e-mails, the Court has reviewed the government's

15 explanation for why there are reasonable grounds to

16 believe the records in this category are relevant and

17 material to an ongoing investigation.  But based on the

18 Court's review, the Court has to conclude that the

19 theory of relevancy upon which this request is made is

20 not based on sufficient specific and articulable facts,

21 but rather more on speculative predictions,

22 assumptions, and scenarios unanchored in any facts.

23 Overall, the requested information by its nature is too

24 attenuated and not sufficiently connected to any

25 evidence relevant, material, or useful to the

1    government's ascribed investigation, particularly when

2    considered in light of the First Amendment activities

3    that it relates to.

4             So for these reasons, Warner Media's motion

5    to modify or quash the July 15 order is granted in part

6    and denied in part.  It is granted to the extent that

7    the order is limited to production of the requested

8    noncontent information pertaining to the external

9    e-mails sent or received from the barbara.starr@turner

10   account from government or military e-mail addresses,

11   and it is otherwise denied.  But this denial is

12   specifically without prejudice to the government's

13   renewal of these broader requests based on information

14   it may obtain from the ordered production or otherwise.

15            The Court will issue that order.

16            Is there anything further on this?

17            Mr. Wolfson, are you trying to speak?

18            MR. WOLFSON:  I'm sorry, Your Honor.  I'm

19   just conferring with my colleagues here.  Obviously, we

20   need some time to review the Court's order for which I

21   thank you.  Would we -- given that Your Honor has

22   upheld the government's 2703(d) order in part, I'd like

23   to move for a stay of obligation to comply with that

24   part so that we can consider whatever our appellate

25   options may be for 14 days.

1          THE COURT:  All right.  Mr. Kromberg, do you

2    want to say anything about that?

3          MR. KROMBERG:  Your Honor, I think that at

4    least with respect to what Your Honor ordered, it's

5    hard to imagine there's a likelihood of success on the

6    merits.  So I oppose the motion to stay.

7          THE COURT:  Well, given the length of time

8    this has been percolating, I don't think that amount of

9    time, given the issues involved in this case, is

10   unreasonable for them to consider their options.  I'm

11   going to stay the order for 14 days.

12         All right.  Anything further?

13         MR. KROMBERG:  Not from the government, Your

14   Honor.

15         THE COURT:  All right.  Very good.

16         MR. KROMBERG:  I'm sorry.  One other thing.

17         THE COURT:  Yes.

18         MR. KROMBERG:  Warner Media did represent

19   that they would preserve all the information, and I

20   would hope -- well, I ask that Your Honor direct that

21   that, in fact, be done.

22         THE COURT:  The Court will order they

23   preserve all of the requested information.

24         MR. WOLFSON:  We will do that, Your Honor.

25         THE COURT:  Let me just point out.  Really,

                        UNDER SEAL

26

1    the 14 days, given the holidays, I think is

2    particularly appropriate.

3            All right. Very good.  The Court will stand

4    in recess.

5            MR. KROMBERG:  Thank you, Your Honor.

6            MR. WOLFSON:  Thank you, Your Honor.

7    ----------------------------------

                    Time:  4:46 p.m.

8

9

10

11

12

13

14

15

16

17

18

19

20

21            I certify that the foregoing is a true and

22   accurate transcription of my stenographic notes.

23

24

25                          Rhonda F. Montgomery, OCR, RPR

                        UNDER SEAL

Rhonda F. Montgomery   OCR-USDC/EDVA   (703) 299-4599