FILED

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

2021 AUG 27  P 4: 07

| | |
|---|---|
| IN RE: APPLICATION OF THE UNITED STATES OF AMERICA FOR ORDER PURSUANT TO 18 U.S.C. § 2703(d) | Case No. 1:20-DM-00012 |

## WARNER MEDIA'S MOTION FOR
## <u>UNSEALING REMAINING DOCUMENTS</u>

Warner Media, LLC ("Warner Media") respectfully moves this Court to unseal the

remaining records filed under seal in the proceedings related to the above-captioned case.

Specifically, Warner Media asks that the Court unseal the following documents filed in Case No.

1:19-ec-1275:  (1) the government's July 14, 2020 *ex parte* application for an order under 18

U.S.C. § 2703(d), (2) the government's *ex parte* and classified addendum[1] to its September 24,

2020 opposition to Warner Media's motion to quash, (3) the government's *ex parte* and

classified addendum to its October 9, 2020 motion for reconsideration of Judge Buchanan's

order from the bench, and (4) any other documents filed under seal during the proceedings before

Judge Buchanan.  Warner Media further asks that the Court unseal the following documents filed

in Case No. 1:20-dm-12:  (1) the government's *ex parte* exhibits 1, 5A, and 8A to its November

30, 2020 response in opposition to Warner Media's appeal (docketed as Attachments 1, 6, and 11

to docket entry 7), (2) the government's *ex parte* addendum to its January 15, 2021 motion for

---

[1] Warner Media is not requesting that any classified information be declassified.  Instead, to the extent the government wishes to protect properly classified information, the government can propose targeted redactions to avoid disclosing that information.  *See United States v. Moussaoui*, 65 F. App'x 881, 888-889 (4th Cir. 2003) (holding that judicial filings should be publicly released with classified information redacted, and that courts have the authority to ensure the redactions "are no greater than necessary").

reconsideration of this Court's December 16, 2020 order, and (3) any other documents filed under seal during the proceedings before this Court.

Warner Media seeks access to these court filings, which contain the government's explanation for seeking records related to the email account of a veteran national security and defense reporter employed by CNN while preventing CNN's General Counsel from discussing the order with the reporter and virtually all others within the company. The orders themselves, as well as other filings not shielded from Warner Media's view during the proceedings, were made public in June 2021. Those records were unsealed in the wake of news reports that the government had compelled production of communication records for journalists at CNN, The Washington Post, and the New York Times. President Biden has since described the government's efforts to obtain a journalist's records in this fashion as "simply wrong."[2] The filings still under seal purportedly reflect the government's justification for seeking, in secret, records from the CNN journalist's account and gagging Warner Media's and CNN's attorneys. Certain information contained in the *ex parte* filings, however, has been publicly disclosed, with the Washington Post describing the FBI agent's affidavit as stating that "the investigation was 'focused most on one particular article,'" without providing further information on which article was of interest to the government.[3] These filings are thus critical to understanding the government's broadside against the First Amendment protections guaranteeing a free and independent press. Warner Media and the public deserve to know the bases for the § 2703(d)

---

[2] Charlie Savage & Katie Benner, *Trump Administration Secretly Seized Phone Records of Times Reporters*, N.Y. Times (June 2, 2021), https://www.nytimes.com/2021/06/02/us/trump-administration-phone-records-times-reporters.html.

[3] Paul Farhi, *The Barbara Starr Question: Why Did Trump's Justice Department Want CNN Pentagon Reporter's Emails?*, Wash. Post (June 15, 2021), https://www.washingtonpost.com/lifestyle/media/barbara-starr-cnn-trump-justice-leak/2021/06/15/7642b1a8-cd1e-11eb-8014-2f3926ca24d9_story.html.

order and the government's push to enforce that order without any limitation, and there is, at this point, no countervailing interest outweighing the public's interest.

## BACKGROUND

On July 14, 2020, the government submitted an *ex parte* application to U.S. Magistrate Judge Ivan D. Davis for an order pursuant to 18 U.S.C. § 2703(d) (the "Order"). Three days later, Warner Media was served with the Order, requiring Warner Media to produce records and other information related to an email account belonging to Barbara Starr, a veteran national security and defense reporter currently employed by CNN (a subsidiary of Warner Media) for the period between June 1, 2017 to July 31, 2017. The Order prohibited Warner Media or CNN— including CNN's Executive Vice President and General Counsel David Vigilante—from disclosing the existence of the application or the Order "to any other person for two years[.]"[4] Mr. Vigilante was forbidden from communicating about any aspect of the Order to Ms. Starr and understood that, if he violated the order, he was subject to charges of contempt and criminal prosecution for obstruction of justice.

After receiving the Order, Warner Media diligently endeavored to identify responsive records. Warner Media's efforts revealed that the Order, as framed, would direct the disclosure of information related to 34,347 emails from Ms. Starr's account. *See* Ex. A, Abrutyn Decl. ¶¶ 6.[5] More than 26,000 of the emails covered by the Order were purely internal within only CNN or Warner Media. *Id.* ¶ 7. The vast majority of that information was surely unrelated to

---

[4] The Order authorized disclosure of the Order to "an attorney for Warner Media, LLC for the purpose of receiving legal advice."

[5] The declarations cited in this motion were filed with the Court on November 9, 2020 as attachments to Warner Media's Objections to and Appeal from Magistrate Judge's Denial of Motion to Quash or Modify Order Issued Pursuant to 18 U.S.C. § 2703(d). For the Court's convenience, they are also attached to this motion.

the government's investigation and did not meet the statutory requirement that it be "relevant and material to an ongoing criminal investigation,"[6] 18 U.S.C. § 2703(d), although the government has never informed Warner Media what the investigation was about. At the same time, much of the responsive information reflected the inner workings of CNN, a large news organization, including its editorial, deliberative, and newsgathering processes—information at the core of the First Amendment's protection of freedom of the press. *See* Abrutyn Decl. ¶¶ 7-8; Ex. B, Suppl. Abrutyn Decl. ¶ 9.

In addition, thousands of the communications captured by the Order would bear directly on Ms. Starr's newsgathering activities by identifying all the news sources with whom she communicated by email during the two-month period, when she communicated with them, and the frequency of those communications. Abrutyn Decl. ¶ 8-10. During the two-month period covered by the Order, Ms. Starr published more than 50 news articles and appeared on television or radio in her professional capacity on more than 150 occasions. *Id.* ¶ 9. Those articles and appearances covered a wide range of topics, including Syria, North Korea, Afghanistan, the U.S.S. Fitzgerald, politics and the military, Iran, Qatar, Russia, China, Libya, Navy SEALs, military preparedness, a Medal of Honor recipient, a military plane crash, and tornados. Suppl. Abrutyn Decl. ¶ 7.

Warner Media conferred with the government in an attempt to narrow the Order's expansive scope. The government, however, was unwilling to agree to any of the limitations proposed by Warner Media to address the Order's overbreadth and related First Amendment concerns. Indeed, the government did not provide Warner Media with any information that

---

[6] In addition, the broad swath of materials at issue also could not satisfy the government's own regulation providing that it will use compulsory process to obtain a journalist's communication records only "when the information sought is *essential* to a successful investigation, prosecution, or litigation." 28 C.F.R. § 50.10(a)(3) (emphasis added).

would have facilitated a more targeted approach, including (a) what the investigation was about, (b) who the subjects(s) of the investigation were, (c) the subject matter of the reporting that was at issue, or (d) when the investigation was opened. And finally, Warner Media and CNN were forbidden from conferring with Ms. Starr.

Warner Media therefore sought to quash or narrow the Order with the court's assistance. At every step of that process, however, the government continued to offer *ex parte* submissions that purported to justify its original broad request.

On September 11, 2020, Warner Media filed a motion requesting that the court quash the Order or narrow that Order to compel the production of only information that is relevant and material to the government's investigation. The government opposed that motion and submitted an *ex parte,* classified addendum to its submission. At a hearing on October 7, 2020, Magistrate Judge Buchanan expressed concerns about the breadth of the government's request and granted Warner Media's motion to quash the Order. Judge Buchanan explained that the government had not sufficiently narrowed the request for records from Ms. Starr's account to obtain relevant records and ordered the government to submit a proposal to narrow its request by October 14, 2020.

On October 9, 2020, instead of submitting a narrowed proposal, the government filed a motion asking Judge Buchanan to reconsider her October 7, 2020 decision, and again filed an *ex parte*, classified submission. On October 26, 2020, after a brief hearing, Judge Buchanan granted the government's motion for reconsideration and ordered Warner Media to comply with the Order. Judge Buchanan reaffirmed her preference that the government narrow its request for records; nonetheless, she concluded from the government's *ex parte* submission that "there is no good way to now narrow this further." Oct. 26, 2020 Hr'g Tr. 7:18-19.

Warner Media appealed that decision to this Court.  On December 16, 2020, this Court held a hearing, in which the Court expressed skepticism of the claims made by the government, including in the *ex parte* submissions.  The Court found that the "government's explanation" for why it needed information about internal correspondence was based on "speculative predictions, assumptions, and scenarios unanchored in any facts" and by its nature was "too attenuated and not sufficiently connected to any evidence relevant, material, or useful to the government's described investigation, particularly when considered in light of the First Amendment activities that it relates to." Dec. 16, 2020 Hr'g Tr. 23:14-24:3.  Accordingly, this Court significantly narrowed the Order.  *See* Order, *In re Application of the U.S. for Order Pursuant to 18 U.S.C. § 2703(d)*, No. 1:20-dm-12 (E.D. Va. Dec. 16, 2021).  DOJ again filed a motion for reconsideration on January 15, 2021 and submitted yet another *ex parte* addendum.  DOJ ultimately withdrew that motion.

On May 13, 2021, DOJ notified Ms. Starr that it had secretly obtained her records.  The notice letter also revealed that the government had obtained orders for information in other electronic accounts where Ms. Starr communicated about work-related matters.  *See* Ex. C, Notice Letter to Ms. Starr Pursuant to 28 C.F.R. § 50.10.[7]  CNN was not previously notified of those other orders and, therefore, was afforded no opportunity to protect any communications that were maintained by these third-party hosts.  And other than knowing that none of the other accounts were held by CNN's parent company, AT&T, Warner Media has no way of knowing how those responses were handled.

---

[7] *See also* Jeremy Herb & Jessica Schneider, *Trump Administration Secretly Obtained CNN Reporter's Phone and Email Records*, CNN (May 20, 2021), https://www.cnn.com/2021/05/20 /politics/trump-secretly-obtained-cnn-reporter-records/index.html.

The government's attempt to obtain a wide swath of records related to Ms. Starr's email and phone accounts was not an isolated incident. In May 2020, it was revealed that the government had obtained phone records, and had sought email records, from the accounts of three Washington Post journalists.[8] The government's requests sought records related to the journalists' reporting on Russia's role in the 2016 election.[9] Then, in June 2020, it was revealed that the government had obtained the phone records of four New York Times reporters, and had sought their email records, purportedly as part of a leak investigation.[10]

In response to public outcry over these revelations, President Biden declared that the record requests were "simply wrong" and that he would "not let it happen again."[11] The White House press secretary later expanded on those comments, stating that the Trump administration had abused its power "to intimidate journalists."[12] Attorney General Merrick Garland took steps to codify the administration's position on July 19, 2021 by sharply limiting how and when prosecutors could secretly obtain reporters' phone and email records. The Attorney General issued a memorandum that provided that the department "will no longer use compulsory legal process for the purpose of obtaining information from or records of members of the news media

---

[8] Devlin Barrett, *Trump Justice Department Secretary Obtained Post Reporters' Phone Records*, Wash. Post (May 7, 2021), https://www.washingtonpost.com/national-security/trump-justice-dept-seized-post-reporters-phone-records/2021/05/07/933cdfc6-af5b-11eb-b476-c3b287e52a01_story.html.

[9] *Id.*

[10] Charlie Savage & Katie Benner, *Trump Administration Secretly Seized Phone Records of Times Reporters*, N.Y. Times (June 2, 2021), https://www.nytimes.com/2021/06/02/us/trump-administration-phone-records-times-reporters.html.

[11] *Id.*

[12] Charlie Savage, *White House Seems to Affirm Biden's Vow to Bar Seizures of Reporters' Phone Data*, N.Y. Times (May 24, 2021), https://www.nytimes.com/2021/05/24/us/politics/biden-reporter-data-seizures.html.

acting within the scope of newsgathering activities."[13]  The memorandum recognizes that "a free and independent press is vital to the functioning of our democracy" and that, even though the United States has "an important national interest in protecting national security information against unauthorized disclosure," a balancing test "may fail to properly weigh the important national interest in protecting journalists from compelling disclosure of information revealing their sources, sources they need to apprise the American people of the workings of their government."[14]

In June 2021, Warner Media and the government agreed to unseal most of the documents submitted in the proceedings before Judge Buchanan and this Court.  This Court granted the parties' consent motions for unsealing, unsealing all of the filings in Case Nos. 1:19-ec-1275 and 1:20-dm-12 except (1) the July 14, 2020 *ex parte* application for an order under 18 U.S.C. § 2703(d), (2) the *ex parte* and classified addendum to the government's September 24, 2020 opposition to Warner Media's motion to quash, (3) the *ex parte* and classified addendum to the government's October 9, 2020 motion for reconsideration of Judge Buchanan's order from the bench, (4) *ex parte* exhibits 1, 5A, and 8A to the government's November 30, 2020 response in opposition to Warner Media's appeal (docketed as Attachments 1, 6, and 11 to docket entry 7), and (5) the *ex parte* addendum to the government's January 15, 2021 motion for reconsideration of this Court's December 16, 2020 order (collectively, the "Sealed Records").  *See* Order, *In re Application of the U.S. for Order Pursuant to 18 U.S.C. § 2703(d)*, No. 1:20-dm-12 (E.D. Va. June 10, 2021); Order, *In re Application of the U.S. for Order Pursuant to 18 U.S.C. § 2703(d)*,

---

[13] Memorandum on the Use of Compulsory Process to Obtain Information From, or Records of, Members of the News Media (July 19, 2021), https://www.justice.gov/ag/page/file/1413001/download.

[14] *Id.*

No. 1:20-dm-12 (E.D. Va. June 8, 2021). Warner Media now seeks to have these remaining filings unsealed (along with any other documents remaining under seal) to allow the public to learn more about the government's efforts to obtain a reporter's email records and to preclude company counsel from communicating about that effort. In advance of filing the instant motion, Warner Media sought the government's consent. The government opposes this motion.

## ARGUMENT

The press and public have a common law right of access to judicial records, including the Sealed Records. The Supreme Court in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978), recognized a common law right "to inspect and copy ... judicial records and documents." *Id.* at 597. Over the decades since, this right of access to court records and proceedings has routinely been recognized as necessary to "promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness." *Doe v. Pub. Citizen*, 749 F.3d 246, 266 (4th Cir. 2014); *see also Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017) (Garland, J.) (recognizing public right of access is "a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch"). Accordingly, the "common law presumes a right to access *all* judicial records and documents," a presumption that can be rebutted only if "the public's right of access is outweighed by competing interests." *In re Application of the U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013) (emphasis in original).

Courts in the Fourth Circuit employ a two-step inquiry to determine whether the common law right of access dictates that documents must be unsealed. First, courts determine whether the documents are "judicial record[s]." *Id.* If they are judicial records, courts analyze whether the

9

"common law presumption of access" can be "substantively overcome[]" by a finding that there is a "significant countervailing interest in support of sealing that outweighs the public's interest in openness." *Id.* at 293. Here, the Sealed Records—containing the government's arguments for an extraordinary order authorizing surveillance of an American journalist—are plainly judicial records, and the government cannot show a significant countervailing interest to overcome the presumption of public access.[15]

A.    **The Sealed Records Are Judicial Records**

It is beyond dispute that the Sealed Records are "judicial records" to which the public has a presumptive right of access under the common law. The Sealed Records—documents that the government filed *ex parte* in connection with its pursuit of a § 2703(d) order—are judicial records because "they were filed with the objective of obtaining judicial action or relief pertaining to § 2703(d) orders." *In re Application*, 707 F.3d at 291; *see also, e.g., Leopold v. United States*, 964 F.3d 1121, 1128 (D.C. Cir. 2020) (Garland, J.) (holding that "applications for [§ 2703(d)] orders and their supporting documents (e.g., accompanying affidavits)" are judicial records for purposes of the common law right of access). Even though these documents were filed under seal, they were "filed before the district court's decision and intended to influence it." *Metlife*, 865 F.3d at 668-669. Further, "an appellate court reviewing the district court's decision ... would want to examine [the filing] to determine whether the court correctly" reached its decision. *Id.*

The Sealed Records therefore are "judicial records" and "the common law presumption of access attaches to these documents." *In re Application*, 707 F.3d at 291.

---

[15] As noted above, Warner Media is not requesting that any classified information be declassified. Instead, to the extent the government wishes to protect properly classified information, the government can propose targeted redactions to avoid disclosing that information.

**B.      There Is No Significant Countervailing Interest That Outweighs The Public's Interest In Openness**

Because the public has a presumptive right of access to the Sealed Records, the Court should release them unless there is "a significant countervailing interest in support of sealing that outweighs the public's interest in openness." *In re Application*, 707 F.3d at 293. In balancing the government's interest and the public's right to access, a court considers the following factors: "(1) whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; (2) whether release would enhance the public's understanding of an important historical event; and (3) whether the public has already had access to the information contained in the records." *Id.* Balancing these factors, the government cannot rebut the strong presumption of access to the Sealed Records. To the contrary, these factors favor granting this motion and releasing the Sealed Records.

*First*, the records are sought not for an improper purpose, but to further the public's knowledge about the government's use of secret orders to obtain information from reporters' accounts—including, in this matter, tens of thousands of wholly *internal* communications of a news organization. The records therefore contain the government's explanation for when, in its view, foundational First Amendment rights and protections afforded to the press can be set aside. As the Fourth Circuit has recognized, cases such as this one "implicate public concerns that are at the core of the interests protected by the right of access: 'the citizen's desire to keep a watchful eye on the workings of public agencies ... [and] the operation of the government.'" *Doe v. Pub. Citizen*, 749 F.3d 246, 271 (4th Cir. 2014) (alterations in original). Indeed, "[t]he interest of the public and press ... is at its apex when the government is a party to the litigation" because "the public has a strong interest in monitoring not only functions of the courts but also the positions that its elected officials and government agencies take in litigation." *Id.*

11

That already elevated public interest is further heightened under the circumstances of this case. The DOJ itself has long acknowledged that using a § 2703(d) order "to seek information from, or records of, non-consenting members of the news media [are] extraordinary measures, not standard investigatory practices." 28 C.F.R. § 50.10(a)(3). And recently, both President Biden and Attorney General Garland have confirmed that using § 2703(d) orders and similar tools to target journalists' accounts is improper and against the public interest. *See supra* p.7-8. The public thus has a profound interest in understanding why the government sought to set aside constitutional protections of journalists' newsgathering activities, and the purported justifications that led two magistrate judges to authorize those record requests—justifications that this Court later rejected. *See Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 574 (4th Cir. 2004) (recognizing "the operation of the court system is a matter of 'utmost public concern,' and '[s]ociety has an understandable interest ... in law enforcement systems and how well they work'" (citation omitted)); *Metlife*, 865 F.3d at 676 (noting that "a fundamental norm of our judicial system" is "that judges' decisions and their rationales must be available to the public").[16] The public likewise has a strong interest in understanding whether the government abused its power "to intimidate journalists," as the

---

[16] *See also Leopold*, 964 F.3d at 1127 ("'Access to records serves the important functions of ensuring the integrity of judicial proceedings in particular and of the law enforcement process more generally.... Like the public trial guarantee of the Sixth Amendment, the right [of access] serves to safeguard against any attempt to employ our courts as instruments of persecution, to promote the search for truth, and to assure confidence in judicial remedies.'"); *EEOC v. Nat'l Children's Ctr.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (acknowledging the "need for public access in those instances where the documents at issue are specifically referred to in the trial judge's public decision" (cleaned up)); *Washington Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991) (noting the public's interest in access to court records as a means of "monitoring prosecutorial ... misconduct").

Biden Administration has suggested.[17] Courts have long recognized the importance of the public seeing and examining the government's use of its power, often through the media, and the same principle holds in this context: "[T]he press serves and was designed to serve as a powerful antidote to any abuses of power by governmental officials and as a constitutionally chosen means for keeping officials elected by the people responsible to all the people whom they were selected to serve." *Mills v. Alabama*, 384 U.S. 214, 219 (1966).

*Second*, unsealing the documents would enhance the public's understanding of an important historical event. As discussed, Warner Media seeks access to these records to shed further light on the government's efforts to secretly obtain information related to a CNN reporter's email account. The government's efforts in that regard, as well as its attempts to obtain the records of other reporters, have been a topic of extensive public debate over the last several months, including at the highest levels of the Department of Justice.[18] Indeed, that interest, and the public backlash to those practices, was so great that the government took the exceptional step of changing its position regarding whether and when it is appropriate to obtain a reporter's records—a step that was presumably informed by the specific balance struck and decisions taken in this case, as reflected in the records currently under seal in this matter. *See supra* p.7-8 & n.13. Releasing the Sealed Records would further the public's understanding of the circumstances that led to that decision.

---

[17] Charlie Savage, *White House Seems to Affirm Biden's Vow to Bar Seizures of Reporters' Phone Data*, N.Y. Times (May 24, 2021), https://www.nytimes.com/2021/05/24/us/politics/ biden-reporter-data-seizures.html.

[18] *E.g.*, Jeremy Herb & Jessica Schneider, *Trump Administration Secretly Obtained CNN Reporter's Phone and Email Records*, CNN (May 20, 2021), https://www.cnn.com/2021/05/20/ politics/trump-secretly-obtained-cnn-reporter-records/index.html; Matt Zapotosky, *Trump Justice Dept. Secretly Obtained CNN Correspondent's Phone, Email Records*, Wash. Post (May 20, 2021), https://www.washingtonpost.com/national-security/trump-cnn-email-phone-records/ 2021/05/20/457daa70-b9bc-11eb-96b9-e949d5397de9_story.html; *see also supra* p.7-8 & n.13.

*Finally*, the public already has access to some, if not most, of the information contained in the Sealed Records. As a result, there is no additional risk of flight by subjects, destruction of evidence, or other issues that might lend some support for shielding information about a criminal investigation.[19] As discussed, there has been substantial media coverage of the government's record request and Ms. Starr's reporting—including the stories that Ms. Starr covered during the two-month period in question. That reporting has also disclosed at least some of the information contained in the government's *ex parte* submissions. In June 2021, for instance, the Washington Post reported that "[a]n FBI agent who provided an [*ex parte*] affidavit in the government's case early this year claimed that 'Starr published multiple articles containing classified information' over the period for which they were seeking her records, but that the investigation was 'focused most on one particular article.'"[20] That agent (and presumably his affidavit), however, did not specify which story the government was interested in.[21] With several parts of the picture already in view, the public should be fully apprised of the government's rationale for seeking two months of records related to Ms. Starr's reporting and records related to tens of thousands of a media organization's internal communications, all while barring CNN's general counsel from disclosing the existence of the order to other CNN personnel (or to any person). This factor thus further supports unsealing here. *See Washington Post*, 386 F.3d at 579 (affirming decision to

---

[19] DOJ has, with its release of the underlying order, explicitly acknowledged a criminal investigation relating to information appearing in Ms. Starr's reporting during the period June 1 to July 31, 2017. Any person who might flee or otherwise destroy evidence in connection with that investigation was given clear notice to act with the Department's prior release months ago.

[20] Paul Farhi, *The Barbara Starr Question: Why Did Trump's Justice Department Want CNN Pentagon Reporter's Emails?*, Wash. Post (June 15, 2021), https://www.washingtonpost.com/lifestyle/media/barbara-starr-cnn-trump-justice-leak/2021/06/15/7642b1a8-cd1e-11eb-8014-2f3926ca24d9_story.html.

[21] *Id.*

14

unseal records notwithstanding government's asserted interest in protecting ongoing investigation because the "information ha[d] already become a matter of public knowledge").

In sum, all three factors favor unsealing the Sealed Records, and the government is unable to demonstrate "a significant countervailing interest in support of sealing that outweighs the public's interest in openness." *In re Application*, 707 F.3d at 293.[22]

## CONCLUSION

For the foregoing reasons, Warner Media respectfully requests that this Court grant its motion and enter an order immediately unsealing any documents that remained sealed in the proceedings before the Magistrate Judges and this Court.

---

[22] Even if it were appropriate for some information in the documents to remain under seal, the entire documents need not be shielded from public view. If there are legitimate investigative concerns, for instance, the government should propose and justify targeted redactions to conceal only that information that would interfere with an ongoing investigation. *See Moussaoui*, 65 F. App'x at 888-889.

Dated: August 27, 2021

Respectfully submitted,

Kevin Gallagher (VA Bar No. 87548)
Jamie S. Gorelick (DC Bar No. 913384)
   (*pro hac vice*)
Aaron Zebley (DC Bar No. 1023653)
   (*pro hac vice*)
Whitney D. Russell (DC Bar No. 987238)
   (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, DC 20006
Tel:  (202) 663-6000
Fax:  (202) 663-6363
kevin.gallagher@wilmerhale.com
jamie.gorelick@wilmerhale.com
aaron.zebley@wilmerhale.com
whitney.russell@wilmerhale.com

*Counsel for Warner Media LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of August, 2021, I filed the foregoing with the Clerk

of the Court by hand and caused a true and correct copy of this filing to be served on the

following:

Gordon D. Kromberg
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
gordon.kromberg@usdoj.gov

*Attorney for the United States*

Whitney Russell (DC Bar No. 987238)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, DC 20006
Tel:  (202) 663-6000
Fax:  (202) 663-6363

*Counsel for Warner Media LLC*